BRIGGS et al. v. ELLIOTT et al.

Civ. No. 2657.

United States District Court
E. D. South Carolina, Charleston Division.

March 13, 1952.

Harold R. Boulware, Columbia, S. C., Spottswood Robinson, III, Richmond, Va., Robert L. Carter, Thurgood Marshall, New

York City, Arthur Shores, Birmingham, Ala., and A. T. Walden, Atlanta, Ga., for plaintiffs.

T. C. Callison, Atty. Gen. of South Carolina, S. E. Rogers, Summerton, S. C., and Robert McC. Figg, Jr., for defendants.

Before PARKER and DOBIE Circuit Judges, and TIMMERMAN, District Judge.

PARKER, Circuit Judge.

On June 23, 1951, this court entered its decree in this cause finding that the provisions of the Constitution and statutes of South Carolina requiring segregation of the races in the public schools are not of themselves violative of the Fourteenth Amendment of the federal Constitution, but that defendants had denied to plaintiffs rights guaranteed by that amendment in failing to furnish for Negroes in School District 22 educational facilities and opportunities equal to those furnished white persons. That decree denied the application for an injunction abolishing segregation in the schools but directed defendants promptly to furnish Negroes within the district educational facilities and opportunities equal to those furnished white persons and to report to the court within six months as to the action that had been taken to effectuate the court's decree. See Briggs v. Elliott, D.C., 98 F.Supp. 529. Plaintiffs appealed from so much of the decree as denied an injunction that would abolish segregation and this appeal was pending in the Supreme Court of the United States when the defendants, on December 21, 1951, filed with this court the report required by its decree, which report was forwarded to the Supreme Court. The Supreme Court thereupon remanded the case that we might give consideration to the report and vacated our decree in order that we might take whatever action we might deem appropriate in the light of the facts brought to our attention upon its consideration. Briggs v. Elliott, 342 U.S. 350, 72 S.Ct. 327. When the case was called for hearing on March 3, 1952, defendants filed a supplementary report showing what additional steps had been taken since the report of December 21, 1951, to comply with the requirements of the court's decree and equalize the educational facilities and opportunities of Negroes with those of white persons within the district.

The reports of December 21 and March 3 filed by defendants, which are admitted by plaintiffs to be true and correct and which are so found by the court, show beyond question that defendants have proceeded promptly and in good faith to comply with the court's decree.[1] As a part of a state-wide educational program to equalize and improve educational facilities and opportunities throughout the State of South Carolina, a program of school consolidation has been carried through for Clarendon County, District No. 22 has been

[1.] The facts disclosed by the ordered and supplemental report are these: In order to qualify for state aid the old school district 22 has been combined with six other districts to become district 1, whose officials have requested and have by order been admitted as parties to this action. Teachers' salaries in the district have been equalized by local supplement, bus transportation has been instituted (none was furnished previously for either race), and $21,522.81 has been spent for furniture and equipment in Negro schools. Enabling legislation has been secured in the state legislature which permits the issuance of bonds of the school district up to 30% of the assessed valuation. (The enabling legislation was made possible by an Amendment to the Constitution of South Carolina passed in 1951. Const. art. 10, § 5, as amended, see 47 St. at Large, p. 14. The maximum had theretofore been 8%). Compliance with the requirements of the newly formed State Education Finance Commission has resulted in funds being made available to District 1 and a plan of school house construction based on a survey of education needs has been prepared, approved and adopted. Plans have been approved for the building of two Negro elementary schools at St. Paul and Spring Hill and advertisements for bids have been circulated in the press. The contract for remodeling the Scotts Branch Elementary School and for construction of the new Scotts Branch High School has already been let, construction has been commenced, and will, according to the record, be completed in time for the next school year.

consolidated with other districts so as to abolish inferior schools, public moneys have been appropriated to build modern school buildings, within the consolidated district, and contracts have been let which will insure the completion of the buildings before the next school year. The curricula of the Negro schools within the district has already been made equal to the curricula of the white schools and building projects for Negro schools within the consolidated district have been approved which will involve the expenditure of $516,960 and will unquestionably make the school facilities afforded Negroes within the district equal to those afforded white persons. The new district high school for Negroes is already 40% completed, and under the provisions of the construction contract will be ready for occupancy sometime in August of this year. That the State of South Carolina is earnestly and in good faith endeavoring to equalize educational opportunities for Negroes with those afforded white persons appears from the fact that, since the inauguration of the state-wide educational program, the projects approved and under way to date involve $5,515,619.-15 for Negro school construction as against $1,992,018.00 for white school construction. The good faith of defendants in carrying out the decree of this court is attested by the fact that, when in October delay of construction of the Negro high school within the consolidated district was threatened on account of inability to obtain release of necessary materials, defendants made application to the Governor of the State and with his aid secured release of the materials so that construction could go forward.

There can be no doubt that as a result of the program in which defendants are engaged the educational facilities and opportunities afforded Negroes within the district will, by the beginning of the next school year in September 1952, be made equal to those afforded white persons. Plaintiffs contend that because they are not now equal we should enter a decree abolishing segregation and opening all the schools of the district at once to white persons and Negroes. A sufficient answer is that the defendants have complied with the decree of this court to equalize conditions as rapidly as was humanly possible, that conditions will be equalized by the beginning of the next school year and that no good would be accomplished for anyone by an order disrupting the organization of the schools so near the end of the scholastic year. As heretofore stated, the curricula of the white and Negro schools have already been equalized. By the beginning of the next scholastic year, physical conditions will be equalized also. This is accomplishing equalization as rapidly as any reasonable person could ask. We dealt with the question in our former opinion where we said, 98 F.Supp. at 537:

"It is argued that, because the school facilities furnished Negroes in District No 22 are inferior to those furnished white persons, we should enjoin segregation rather than direct the equalizing of conditions. In as much as we think that the law requiring segregation is valid, however, and that the inequality suffered by plaintiffs results, not from the law, but from the way it has been administered, we think that our injunction should be directed to removing the inequalities resulting from administration within the framework of the law rather than to nullifying the law itself. As a court of equity, we should exercise our power to assure to plaintiffs the equality of treatment to which they are entitled with due regard to the legislative policy of the state. In directing that the school facilities afforded Negroes within the district be equalized promptly with those afforded white persons, we are giving plaintiffs all the relief that they can reasonably ask and the relief that is ordinarily granted in cases of this sort. See Carter v. County School Board of Arlington County, Virginia, 4 Cir., 182 F.2d 531. The court should not use its power to abolish segregation in a state where it is required by law if the equality demanded by the Constitution can be attained otherwise. This much is demanded by the spirit of comity which must prevail in the relationship be-

tween the agencies of the federal government and the states if our constitutional system is to endure."

For the reasons set forth in our former opinion, we think that plaintiffs are not entitled to a decree enjoining segregation in the schools but that they are entitled to a decree directing defendants promptly to furnish to Negroes within the consolidated district educational facilities and opportunities equal to those furnished white persons. The officers and trustees of the consolidated district will be made parties to this suit and will be bound by the decree entered herein.

Injunction abolishing segregation denied.

Injunction directing the equalization of educational facilities and opportunities granted.

DOBIE, Circuit Judge, and TIMMERMAN, District Judge, concur.