Harry BRIGGS, Jr., et al., Plaintiffs,

v.

R. W. ELLIOTT et al., Defendants.

Civ. A. No. 2657.

United States District Court
E. D. South Carolina,
Charleston Division.

July 15, 1955.

Thurgood Marshall, New York, N. Y., Harold R. Boulware, Columbia, S. C., for plaintiffs.

S. E. Rogers, Summerton, S. C., Robert McC. Figg, Jr., Charleston, S. C., for defendants.

Before PARKER and DOBIE, Circuit Judges, and TIMMERMAN, District Judge.

PER CURIAM.

This Court in its prior decisions in this case, 98 F.Supp. 529; 103 F.Supp. 920, followed what it conceived to be the law as laid down in prior decisions of the Supreme Court, Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256; Gong Lum v. Rice, 275 U.S. 78, 48 S.Ct. 91, 72 L.Ed. 172, that nothing in the Fourteenth Amendment to the Constitution of the United States forbids segregation of the races in the public schools provided equal facilities are accorded the children of all races. Our decision has been reversed by the Supreme Court, Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753, 757, which has remanded the case to us with direction "to take such proceedings and enter such orders and decrees consistent with this opinion as are necessary and proper to admit to public schools on a racially non-discriminatory basis with all deliberate speed the parties to these cases".

Whatever may have been the views of this court as to the law when the case was originally before us, it is our duty now to accept the law as declared by the Supreme Court.

Having said this, it is important that we point out exactly what the Supreme Court has decided and what it has not decided in this case. It has not decided that the federal courts are to take over or regulate the public schools of the states. It has not decided that the states must mix persons of different races in the schools or must require them to attend schools or must deprive them of the right of choosing the schools they attend. What it has decided, and all that it has decided, is that a state may not deny to any person on account of race the right to attend any school that it maintains. This, under the decision of the Supreme Court, the state may not do directly or indirectly; but if the schools which it maintains are open to children of all races, no violation of the Constitution is involved even though the children of different races voluntarily attend different schools, as they attend different churches. Nothing in the Constitution or in the decision of the Supreme Court takes away from the people freedom to choose the schools they attend. The Constitution, in other words, does not require integration. It merely forbids discrimination. It does not forbid such segregation as occurs as the result of voluntary action. It merely forbids the use of governmental power to enforce segregation. The Fourteenth Amendment is a limitation upon the exercise of power by the state or state agencies, not a limitation upon the freedom of individuals.

The Supreme Court has pointed out that the solution of the problem in accord with its decisions is the primary responsibility of school authorities and that the function of the courts is to determine whether action of the school authorities constitutes "good faith implementation of the governing constitutional principles". With respect to the action to be taken under its decision the Supreme Court said:

"Full implementation of these constitutional principles may require solution of varied local school problems. School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles. Because of their proximity to local conditions and the possible need for further hearings, the courts which originally heard these cases can best perform this judicial appraisal. Accordingly, we believe it appropriate to remand the cases to those courts:

"In fashioning and effectuating the decrees, the courts will be guided by equitable principles. Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs. These cases call for the exercise of these traditional attributes of equity power. At stake is the personal interest of the plaintiffs in admission to public schools as soon as practicable on a nondiscriminatory basis. To effectuate this interest may call for elimination of a variety of obstacles in making the transition to school systems operated in accordance with the constitutional principles set forth in our May 17, 1954, decision. Courts of equity may properly take into account the public interest in the elimination of such obstacles in a systematic and effective manner. But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them.

"While giving weight to these public and private considerations, the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. Once such a start has been made, the courts may find that additional time is necessary to carry out the ruling in an effective manner. The burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. To that end, the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis, and revision of local laws and regulations which may be necessary in solving the foregoing problems. They will also consider the adequacy of any plans the defendants may propose to meet these problems and to effectuate a transition to a racially nondiscriminatory school system. During this period of transition, the courts will retain jurisdiction of these cases.

"The judgments below, except that in the Delaware case, are accordingly reversed and remanded to the District Courts to take such proceedings and enter such orders and decrees consistent with this opinion as are necessary and proper to admit to public schools on a racially nondiscriminatory basis with all deliberate speed the parties to these cases."

The Court is convened to hear any concrete suggestions you may have to make as to the decree that it should enter.

### Decree

This cause coming on to be heard on the motion of plaintiffs for a judgment and decree in accordance with the mandate of the Supreme Court, and the Court having carefully considered the decision of the Supreme Court, the arguments of counsel, and the record heretofore made in this cause:

It is ordered that the decree heretofore entered by this Court be set aside and, in accordance with the decision and mandate of the Supreme Court, it is ordered, adjudged and decreed that the provisions of the Constitution and laws of the State of South Carolina requiring segregation of the races in the public schools are null and void because violative of the Fourteenth Amendment to the Constitution of the United States, and that the defendants be and they are hereby restrained and enjoined from refusing on account of race to admit to any school under their supervision any child qualified to enter such school, from and after such time as they may have made the necessary arrangements for admission of children to such school on a non-discrimi-

natory basis with all deliberate speed as required by the decision of the Supreme Court in this cause.

It is further ordered that this cause be retained on the docket for the entry of further orders herein if necessity for same should arise.