**Alvin J. MATTHEWS et al., Plaintiffs,**

v.

**R. W. LAUNIUS, President, et al., and Bearden School District No. 53 of Ouachita County, Arkansas, Defendants.**

Civ. A. No. 570.

United States District Court
W. D. Arkansas, El Dorado Division.

Oct. 4, 1955.

L. Clifford Davis, Fort Worth, Tex., for plaintiffs.

L. B. Smead, Camden, Ark., for defendants.

JOHN E. MILLER, District Judge.

On this 4th day of October, 1955, come the plaintiffs in person and by their attorneys, L. Clifford Davis and Christopher C. Mercer, and come the defendants in person and by their attorney, L. B. Smead, and this being the date set for a hearing on the motion for summary judgment filed herein on June 17, 1954, the Court proceeds to a consideration of the issues presented by said motion and the record herein.

Since the principal issue involved herein is one of great public interest, the Court, in an effort to help the parties solve the issues, made a statement to all the parties and their attorneys in which it reviewed the proceedings heretofore had herein and the law applicable to the facts as disclosed by the record. A transcribed copy of such statement is filed herein.

For the purpose of this order it is not necessary to state fully all the facts. A brief resume is sufficient.

The complaint was filed on June 20, 1952, seeking (1) a declaratory judgment declaring Section 80-509, Ark. Stats., to be unconstitutional, and (2) that the policy of denying equal facilities to school children of the Negro race is unconstitutional.

It was alleged that the failure of the defendants to furnish equal school facilities to the plaintiffs is a violation of the equal protection of the laws as guaranteed under the 14th Amendment to the Constitution of the United States, and that the Court should permanently restrain and enjoin the defendants and their successors in office from making any distinction based upon race or color in making available to plaintiffs, and others similarly situated, whatever opportunities, advantages, and facilities that are or may be provided by the defendants for the public education of school children in the defendant district. Also, the plaintiffs prayed that a three-judge court be convened to determine the issues raised by the complaint.

On July 5, 1952, the Court entered an order denying the application of plaintiffs for the convening of a District Court of three judges.

On September 1, 1952, the defendants filed an answer in which they admitted that the schools in the defendant district were being operated on a segregated basis but denied that the facilities furnished the races were unequal.

On September 20, 1952, plaintiffs filed 53 interrogatories which were answered on October 9, 1952, by the defendant Tom Ford, Superintendent of the Bearden Public Schools. Also, on July 13, 1953, plaintiffs filed 46 additional interrogatories which were answered by Mr. Ford on August 20, 1953.

Subsequent to the joining of the issues as made by the complaint and answer the Court had several conferences with the attorneys for the respective parties, and by mutual consent it was agreed that the case should be continued from time to time until the Supreme Court of the United States had determined the cases that were then pending before it in which the issue of whether racial discrimination in public education is unconstitutional was directly presented. On May 17, 1954, the Supreme Court in answering the question, said:

"Separate educational facilities are inherently unequal. Therefore, we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment. This disposition makes unnecessary any discussion whether such segregation also violates the Due Process Clause of the Fourteenth Amendment."

Brown v. Board of Education of Topeka, 347 U.S. 483, 495, 74 S.Ct. 686, 692, 98 L.Ed. 873.

The mandate of the Supreme Court was not immediately issued, but the Court retained jurisdiction of the cases

until further consideration could be given to the methods to be followed by trial courts in the implementation of the constitutional principles declared by the court.

On May 31, 1955, the Supreme Court rendered its opinion on the question of the implementation of those constitutional principles. Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753, 755. In the latter opinion the Supreme Court referred to its former opinion and to the constitutional principles therein set forth, and in reference thereto said:

"All provisions of federal, state, or local law requiring or permitting such discrimination must yield to this principle. There remains for consideration the manner in which relief is to be accorded."

In the course of the opinion the Court recognized that local school authorities have the primary responsibility for solving the problems that arise from the constitutional principles announced in the first opinion, and stated that the courts will have to consider whether the actions of school authorities constitute good faith implementation of the governing constitutional principles. The court also stated that in fashioning and effectuating the decrees that the court should be guided by equitable principles but emphasized that the plaintiffs and others similarly situated should be admitted to public schools as soon as practicable on a non-discriminatory basis, and that the courts should require the school authorities to make a prompt and reasonable start toward full compliance with the ruling of May 17, 1954.

The court further emphasized that the vitality of the constitutional principles cannot be allowed to yield simply because of disagreement with them.

■ In determining the question the court may and should consider all problems related to administration arising from the physical condition of the school plant, the school transportation system, personnel, and revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a non-racial basis.

Trial courts are required to consider the adequacy of any plan the local school board may propose to meet the problems and to effectuate a transition to a racially non-discriminatory school system.

At present there is a racially discriminatory school system in the defendant district. It is fully realized that the problem confronting the defendant Board of Directors, the District, and its School Superintendent, are difficult of solution, but they are problems that must be solved in accordance with the constitutional principles which are binding upon all, including this Court.

School authorities have the primary responsibility for solving these problems but courts are required to consider whether the action of the school authorities constitutes good faith implementation of the governing constitutional principles.

While giving weight to these public and private considerations, the court must require that the defendants make a prompt and reasonable start toward full compliance with the ruling of the Supreme Court of May 17, 1954. And the burden is on the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date.

The court is advised that some consideration has been given to the solution of the problems in accordance with the law and the powers of the defendants to comply with the law. It appears that the chief obstacle to a full compliance with the law is the lack of finances and little progress has been made. In all probability a fuller cooperation by the plaintiffs and persons similarly situated with the defendants will be required.

■ Under the ruling of the Supreme Court, where it is shown that a racially discriminatory public school system is being operated, the trial court may issue

immediately a mandatory injunction requiring the school authorities to comply with the law as declared by the Supreme Court and place upon the school authorities the burden of establishing that time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. Such an order was entered by a three judge court in the Eastern District of South Carolina. See, Briggs v. Elliott, D.C., 132 F.Supp. 776.

This court fully realizes the immensity of the task confronting the defendants and that because of the lack of school finances, the crowded conditions of the present facilities and the necessity to readjust the system that has been followed for decades, that additional time is necessary and the court feels that better progress may be made at this time without the issuance of an injunction, but all parties in interest should realize that the court in the administration of the law must, within a reasonable period of time and as soon as practicable, require the school authorities to conduct the public schools in the district on a racially non-discriminatory basis.

Blanket injunctions against general violations of a law are repugnant to American spirit and should not lightly be sought or judicially granted if compliance with the law can be obtained otherwise. In view of the present status of this case and the undisputed facts the court is of the opinion that the public interest and the interest of the plaintiffs and others similarly situated will be best served by deferring the entry of an injunction at this time.

It is therefore ordered and adjudged that further consideration of the motion for summary judgment be deferred; that the defendants and their successors in office shall make a prompt and reasonable start towards the effectuation of the transition to a racially non-discriminatory school system as required by the ruling of the Supreme Court of the United States by its order of May 17, 1954; that the defendants and their successors in office report to this court not later than the beginning of the next school year, the progress that has been made and the plans that they have to effectuate the transition from the present system to a racially non-discriminatory school system.

That the cause is continued until the next regular term of this court when the court will consider the adequacy of such plans and determine whether further time is necessary in the public interest and is consistent with good faith compliance by the defendants with the constitutional requirements at the earliest practicable date.