**John AARON et al., Plaintiffs,**

v.

**William G. COOPER et al., Members of the Board of Directors of the Little Rock, Arkansas, Independent School District, and Virgil Blossom, Superintendent of Schools, Defendants.**

**Civ. A. No. 3113.**

United States District Court
E. D. Arkansas,
Western Division.

Jan. 9, 1959.

Thurgood Marshall, New York City, Wiley A. Branton, Pine Bluff, Ark., for plaintiffs.

Osro Cobb, U. S. Atty., Little Rock, Ark., Donald B. MacGuineas, Washington, D. C., for United States as amicus curiae.

Mehaffy, Smith & Williams, Little Rock, Ark., for defendants.

JOHN E. MILLER, District Judge.

On December 8, 1958, this court, by order, fixed January 6, 1959, as the date of a hearing for the purpose of determining and fixing the provisions and terms of the order of this court in accordance with the mandate of the United States Court of Appeals for the Eighth Circuit, issued December 2, 1958, and filed herein December 4, 1958, 261 F.2d 97.

The litigation of the questions involved in the instant case stems from the decisions of the Supreme Court of the United States in the case of Brown v. Board of Education of Topeka, May 17, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and May 31, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083.

In the May 17, 1954, decision the Supreme Court, at page 495 of 347 U.S., at page 692 of 74 S.Ct., said:

"We conclude that in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal. Therefore, we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment."

In the May 31, 1955, opinion, the Court, at page 298 of 349 U.S., at page 755 of 75 S.Ct., said:

"These cases were decided on May 17, 1954. The opinions of that date, declaring the fundamental principle that racial discrimination in public education is unconstitutional, are incorporated herein by reference. All provisions of federal, state, or local law requiring or permitting such discrimination must yield to this principle."

On page 300 of 349 U.S., on page 756 of 75 S.Ct. the Court emphasized that the vitality of the constitutional principles cannot be allowed to yield simply because of disagreement with them.

United States Constitution, Article 6, Clause 2, states:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

United States Constitution, Article 3, Section 1, provides:

"The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."

As long ago as 1803, Chief Justice Marshall, speaking for a unanimous Court in the case of Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60, in referring to the Constitution as "the fundamental and paramount law of the nation", said:

"It is, emphatically, the province and duty of the judicial department to say what the law is."

That decision declared the basic principle that the federal judiciary is supreme in the interpretation of the Con-

stitution of the United States, and that principle has ever since been accepted and respected by the people of the United States as an indispensable feature of our constitutional system.

The two Brown decisions, supra, have been severely criticized by many citizens and, on the other hand, have been vehemently applauded by other citizens. Notwithstanding the criticism on one hand and the approval on the other, they stand under our constitutional system as precedents, applicable to and conclusive of the questions in the case in which rendered. Also, they are authoritative guides in other similar cases, and, unless modified by the Supreme Court of the United States, will continue to stand until changed by the states and the citizens in the manner and in accordance with the procedure provided in the Constitution for changing its provisions or interpretations.

This court is not unmindful of the profound effect of the decisions in the Brown cases, supra, upon the mores and traditions of our land. However, this court is one of limited jurisdiction, and is bound by the decisions of the appellate courts. Judicial restraint prevents this court from criticizing or approving the constitutional principles announced by the appellate courts. It is not for this court to reason why nor make reply. Its duty in this case is clearly defined, and its action is commanded and restricted by the former adjudications.

Before outlining the provisions of the order which this court has been commanded to enter, it seems not inappropriate to chronologically review the litigation and decisions of the courts in the instant case on the questions now before this court.

The first decision in this case was announced August 27, 1956, D.C., 143 F. Supp. 855. Involved in that case was the reasonableness of the plan of integration that had been formulated by the Superintendent and the Board of Directors of the Little Rock, Arkansas, Independent School District. The plan had been attacked by the plaintiffs through the NAACP. The only question before the court in that case, as above stated, was whether the plan was in conformity with the requirements of the decisions in the Brown cases, supra. The sole objective of the defendants was to faithfully and effectively inaugurate a school system in accordance with the law as declared by the Supreme Court. They were seeking ways and means of effectuating a transition from a segregated to a non-discriminatory system without destroying the fundamental objectives of the system itself. In disposing of the question, the court, at page 866 of 143 F.Supp., said:

"This court is of the opinion that it should not substitute its own judgment for that of the defendants. The plan which has been adopted after thorough and conscientious consideration of the many questions involved is a plan that will lead to an effective and gradual adjustment of the problem, and ultimately bring about a school system not based on color distinctions.

"It would be an abuse of discretion for this court to fail to approve the plan or to interfere with its consummation so long as the defendants move in good faith, as they have done since immediately after the decision of May 17, 1954, to inaugurate and make effective a racially nondiscriminatory school system."

The judgment of this court was entered in accordance with the above declaration.

The case was appealed to the United States Court of Appeals for the Eighth Circuit, 243 F.2d 361, and on April 26, 1957, that court affirmed the decision of the trial court which, as above stated, approved the plan of defendant Superintendent and Board of Directors. In affirming the decision of the trial court, the Court of Appeals, at page 364 of 243 F.2d, said:

"The schools of Little Rock have been on a completely segregated basis since their creation in 1870. That fact, plus local problems as to facilities, teacher personnel, the cre-

ation of teachable groups, the establishment of the proper curriculum in desegregated schools and at the same time the maintenance of standards of quality in an educational program may make the situation at Little Rock, Arkansas, a problem that is entirely different from that in many other places."

According to the provisions of the plan for integration, it was to become partially effective at the beginning of the 1957–1958 school year.

On September 2, 1957, the Governor of the State of Arkansas ordered the Arkansas National Guard to be stationed at the Little Rock Central High School for the announced purpose of maintaining law and order and to prevent violence upon the admission of Negroes to the high school. A petition to enjoin the Governor and the officials of the Arkansas National Guard was filed, and on September 21, 1957, D.C., 156 F.Supp. 220, the court, presided over by Honorable Ronald N. Davies, sitting by assignment, entered an order permanently enjoining the Governor and all other persons subject to the orders of the Governor, and the officers of the Arkansas National Guard acting in concert or participating with them, from obstructing or preventing by means of the Arkansas National Guard, or otherwise, Negro students, eligible under the plan of school integration, from attending the Little Rock Central High School, and from threatening or coercing said students not to attend said school or from obstructing or interfering in any way with the effectuation of the court's orders of August 28, 1956, and Septemebr 3, 1957, or from obstructing or interfering with the constitutional right of the Negro children to attend said school.

The order of September 3, 1957, referred to by Judge Davies was a temporary restraining order entered by him on September 3, 1957, ordering the Board of Directors of the School District and the Superintendent to comply forthwith with the original plan of school integration.

After the entry of the order permanently enjoining the Governor and others from interfering with the carrying out of the plan of integration, the case was appealed to the United States Court of Appeals for the Eighth Circuit, Faubus v. United States, 254 F.2d 797, and on April 28, 1958, that court affirmed the order of this court entered, as above stated, on September 21, 1957. At page 807 of 254 F.2d the Court of Appeals said:

"It is certain that while the state government is functioning, it cannot suppress disorders the object of which is to deprive citizens of their lawful rights, by using its forces to assist in carrying out the unlawful purposes of those who create the disorders, or by suppressing rights which it is the duty of the state to defend. The use of troops or police for such purposes would breed violence."

On August 30, 1957, Judge Davies entered an order herein making Mrs. Clyde Thomason a party defendant in the case. The order making Mrs. Thomason and the class she represented parties was entered in response to a petition that had been filed by the Board of Directors on August 29, 1957, asking that she be made a party and enjoined from using an order of the Chancery Court of Pulaski County, Arkansas, as a means for preventing the Little Rock School Board from opening on September 3, 1957, the partially integrated high schools in the Little Rock School District in accordance with the Board's plan of integration, and from frustrating the judgment and decree of the court which approved the plan and provided for its effectuation. Immediately following the making of Mrs. Thomason a party, the Judge issued the injunction against her and others whom she represented.

There was an appeal to the United States Court of Appeals for the Eighth Circuit from that judgment, 254 F.2d 808, and on April 28, 1958, the Court of Appeals affirmed the judgment of Judge Davies in permanently enjoining Mrs.

Thomason and others from interfering with the carrying out of the plan.

The Court of Appeals, in disposing of the appeal by Mrs. Thomason, at page 810 of 254 F.2d, said:

"Obviously, the decree of the state Chancery Court was in direct conflict with the judgment and decree of the federal District Court and of this Court affirming that judgment and decree. The School Board was between 'the upper and nether millstone.' It had, in effect, been ordered by the federal court to carry out the plan of school integration, and had by the state court been enjoined from carrying it out. The schools were about to be opened and prompt action was imperative to enable the School Board to know whether to proceed with its plan, confirmed by the federal district and appellate courts, or whether to abandon it because of the decree of the state court. * * * The federal District Court was certainly not required to permit the decree of the state court to frustrate the judgment and decree of the federal court approving and effectuating the plan of the School Board for the gradual integration of the schools."

In accordance with the restraining order of the court, the Governor withdrew the National Guardsmen from Central High School. On Monday, September 23, 1957, the Negro students entered the school under the protection of the Police Department of the City of Little Rock and certain members of the Arkansas State Police. A large and demonstrating crowd gathered at the school, and the police officers advised the Superintendent to remove the Negro children from the school, which was done. A short time thereafter the Negro students were readmitted to the school under the protection of combat troops of the United States Army which the President had ordered to Little Rock for that purpose.

On February 20, 1958, the Board of Directors and the Superintendent of Schools filed a petition asking for an order to permit them to suspend until January, 1961, the operation of the plan of integration. The case, 163 F. Supp. 13, was heard by Honorable Harry J. Lemley, United States District Judge for the Eastern and Western Districts of Arkansas, and on June 23, 1958, he entered an order after a full and complete hearing granting the petition of the Board of Directors and the Superintendent of Schools in which, at page 32 of 163 F.Supp., Judge Lemley said:

"It being in the public interest, including the interest of both white and Negro students at Little Rock, that we have a peaceful interlude for the period mentioned, an order is being entered permitting the Board to suspend the operation of its said plan until mid-semester of the 1960-61 school year, without the Board, or the individual members thereof, or the Superintendent of Schools being considered in contempt of this Court."

There was an appeal from the judgment of this court to the United States Court of Appeals for the Eighth Circuit, 257 F.2d 33, and on August 18, 1958, the Court of Appeals reversed the judgment of the District Court and remanded the case with directions to dismiss the petition of the Board of Directors and the Superintendent.

In the course of the opinion, the Court of Appeals, at page 40 of 257 F.2d, said:

"The issue plainly comes down to the question of whether overt public resistance, including mob protest, constitutes sufficient cause to nullify an order of the federal court directing the Board to proceed with its integration plan. We say the time has not yet come in these United States when an order of a Federal Court must be whittled away, watered down, or shamefully withdrawn in the face of violent and unlawful acts of individual citizens in opposition thereto.

"Mindful as we are that the incidents which occurred within Central

High School produced a situation which adversely affected normal educational processes, we nevertheless are compelled to hold that such incidents are insufficient to constitute a legal basis for suspension of the plan to integrate the public schools in Little Rock. To hold otherwise would result in '* * * accession to the demands of insurrectionists or rioters * * *'."

Honorable Archibald K. Gardner, Chief Judge of the United States Court of Appeals, did not agree with the majority of the court and, in his dissenting opinion, at page 41 of 257 F.2d, said:

"There had been no integration in the schools and that practice had the sanction of a decision of the Supreme Court of the United States as constitutionally legal. It had become a way of life in that section of the country and it is not strange that this long-established, cherished practice could not suddenly be changed without resistance. Such changes, if successful, are usually accomplished by evolution rather than revolution, and time, patience, and forbearance are important elements in effecting all radical changes. The action of Judge Lemley was based on realities and on conditions, rather than theories. The exercise of his discretion should not, I think, be set aside as it seems to me it was not an abuse of discretion but rather a discretion wisely exercised under the conditions."

On August 21, 1958, the Court of Appeals stayed its mandate to permit the School Board to petition the Supreme Court for certiorari. Pending the filing of the School Board's petition for certiorari, the Negro respondents, on August 23, 1958, applied to one of the Justices of the Supreme Court to stay the order of the Court of Appeals withholding its own mandate and also to stay the District Court's judgment. The Supreme Court convened in special term on August 28, 1958, 358 U.S. 27, 78 S.Ct. 1397, 3 L.Ed.2d 1, and entered an order which deferred decision upon the motions for stay and fixed September 8, 1958, as a day on or before which the petition for certiorari might be filed and also fixed September 11, 1958, for oral argument upon the petition for certiorari. The next day, September 12, 1958, 358 U.S. 28, 78 S.Ct. 1399, 3 L.Ed.2d 3, the Supreme Court unanimously affirmed the judgment of the Court of Appeals and set aside the order of the Court of Appeals staying its own mandate. Later, on September 29, 1958, the Supreme Court filed its opinion, 358 U.S. 1, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 1, in which the Supreme Court said:

"The controlling legal principles are plain. The command of the Fourteenth Amendment is that no 'State' shall deny to any person within its jurisdiction the equal protection of the laws. 'A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a State government * * * denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State. This must be so, or the constitutional prohibition has no meaning.' Ex parte Virginia, 100 U.S. 339, 347, 25 L.Ed. 676. Thus the prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action, see State of Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667; Commonwealth of Pennsylvania v. Board of Directors of City Trusts of Philadelphia, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792; Shel-

ley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161; or whatever the guise in which it is taken, see Derrington v. Plummer, 5 Cir., 240 F.2d 922; Department of Conservation and Development etc. v. Tate, 4 Cir., 231 F.2d 615. In short, the constitutional rights of children not to be discriminated against in school admission on grounds of race or color declared by this Court in the Brown case can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes for segregation whether attempted 'ingeniously or ingenuously.' Smith v. State of Texas, 311 U.S. 128, 132, 61 S.Ct. 164, 165, 85 L.Ed. 84."

Prior to the opinion of the Supreme Court of September 29, 1958, the General Assembly of the State of Arkansas in special session convened on August 26, 1958, enacted Acts 4 and 5 of 1958 which were approved by the Governor of Arkansas on September 12, 1958, and on the same date became laws of the State of Arkansas.

Pursuant to the provisions of Act No. 4, the Governor ordered by public proclamation that:

"(A) The public senior high schools of the Little Rock School District are hereby ordered closed pursuant to said Act, effective at 8 o'clock a.m., Monday, September 15, 1958.

"(B) That a special election be held in the Little Rock School District on Tuesday, October 7, 1958, in the manner provided by law in said Act No. 4."

The date for the election was subsequently changed to September 27, 1958.

Act No. 4 provides that the high schools shall be operated on an integrated basis if "a majority of the qualified electors of the District vote in favor of the racial integration of all schools in the District," otherwise "no schools within the District shall be integrated."

In the election of September 27, 1958, a majority of the qualified electors of the District did not vote in favor of racial integration, and the high schools remained closed under the proclamation of the Governor issued, as above stated, on September 12, 1958.

Immediately following the judgment of the Supreme Court of September 12, 1958, the Board of Directors and Superintendent filed a petition in this court for instructions as to whether they might, without violating the orders of the court, lease the school properties to private institutions for conducting a high school program on a racially segregated basis.

On September 24, 1958, the plaintiffs herein filed a motion for further relief in which they prayed for an order restraining the Board and the Superintendent from leasing or otherwise transferring title, possession or operation of the school property to the Little Rock Private School Corporation or any other corporation, and, in the alternative, for an order decreeing that, if the school property is leased or otherwise transferred to the Little Rock Private School Corporation or other corporation, the lease or transfer should provide that said schools be operated pursuant to the plan of integration heretofore approved by the court and in such a manner as not to directly or indirectly discriminate against the members of any race.

The petition and motion were presented to the court at Fort Smith on September 26, and at the conclusion of the hearing the court dismissed the petition of the Board and the Superintendent for instructions on the ground that it was without authority to render an advisory opinion. In the course of the decision on that question, the court orally stated:

"I think the School Board from the inception of this controversy has acted in good faith in recognition of its responsibilities as a school board. They are between the horns of the dilemma. Their schools are

closed, whether rightfully or illegally is a question that I am not determining. Their schools are closed under a state statute. They have the physical property in their possession but are not permitted to use it because of the closing order. They are charged under the state law with the responsibility of operating the schools. Their power to act as Directors and the limitations of their power stem from the Statutes of Arkansas. So far as I know, only one provision of that statute has been declared illegal. That was the provision that they should maintain separate but equal facilities. That has been thrown out by the Supreme Court of the United States.

"Now they come here asking whether they will be held in contempt if they lease the school property or if they fail to operate the schools. I am not going to answer that question because they are not in contempt of court yet. Certainly, it would be unusual for a court of justice to hold anyone in contempt for not complying with an order of the court when he was prevented from doing so by another court of equal or concurrent jurisdiction or by valid legislation."

The court, in disposing of the motion of the plaintiffs for further relief, said:

"To grant the prayer of the plaintiffs for additional relief and to follow the suggestion of the Government would, in my opinion, require the court to hold that the acts of the Legislature are invalid; that they infringe upon the Constitution of the United States and are therefore invalid and of no force and effect. Under the applicable law, this court doesn't have authority to make such an order."

There was an appeal from the refusal of the court to grant the petition of the plaintiffs for further relief, 261 F.2d 97, 106, and on November 10 the United States Court of Appeals for the Eighth Circuit inferentially held that it would have been judicially improper for the court to render an advisory opinion on the question of the right of the Board to lease the school properties, but the Court reversed the holding of this court in dismissing the motion of plaintiffs for additional relief, and held that the validity of the Acts of the Special Session of the General Assembly of the State of Arkansas, hereinbefore referred to, were not directly involved for the reason that the plaintiffs were not questioning the validity of such Acts or the order of the Governor closing the schools. In other words, the Court of Appeals distinguished between an attempt to reach the unconstitutionality of the result obtained by the use of a state statute and a challenge of the constitutionality of such statute which, of course, would require consideration by a three-judge court. In making the distinction, the Court said:

"Only where it is necessary to hold a state statute unconstitutional, if the action taken by a state officer thereunder or an order issued by an administrative agency pursuant thereto is to be capable of being enjoined, does § 2281 require a three-judge court. Acts of state officials, which otherwise constitute a violation of federal law, or which are on other federal grounds legally improper, in their relation to a particular situation, may afford the basis for an injunction without regard to the validity of the state statute underlying them. A three-judge district court is not required for the issuance of such injunction."

The Court further said:

"The District Court, this Court, and the Supreme Court have all recognized the previous good faith of appellees. But what they have now done and threatened to do can hardly legally be viewed as a matter of neutrality in relation to the court decree against them. Complicating, impeding and assisting to effect a

frustration of the execution of the decree cannot be termed legal neutrality. Nor could a position of neutrality continuingly serve to satisfy appellees' obligation under the decree. They are under mandate, as the agency through which the State has committed the constitutional violation existing in the Little Rock School District, to move forward to correct that violation, by carrying out the integration plan. Implicit in this mandate of moving forward to carry out the plan necessarily is a reasonable exercising by them of such legal powers as they possess, to try to achieve that integration."

Also, the Court said:

"Any attempts, from whatever source occurring, to interfere with or prevent the carrying out of the integration plan, would not release appellees from the obligation of the judicial order against them. Obstructions to their taking of some step or steps in accordance with the plan might (dependent upon the circumstances) enable them to make defense to a charge of contempt for failure to execute, but this would not dissolve the order. And so, it necessarily would constitute a disregard of their obligation for appellees, because they might believe that the execution of the integration plan had been effectively interfered with, to engage or assist in anything related to the situation inconsistent affectingly with the order, while the order stood judicially unchanged. Above all, would it be legally improper for them to take any affirmative step of action or collaboration, which either was intended or manifestly would serve to hamper or thwart the execution of such order."

Accordingly, the judgment of this court was vacated and the cause remanded for entry of order of injunction as therein directed.

In People of State of Illinois ex rel. Hunt v. Illinois Central R. Co., 1902, 184 U.S. 77, 91, 22 S.Ct. 300, 46 L.Ed. 440, the Supreme Court of the United States, in quoting from Sibbald v. United States, 12 Pet. 488, 492, 9 L.Ed. 1167, said [184 U.S. 77, 91, 22 S.Ct. 305]:

" 'Whatever was before the court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case, and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution, or give any other or further relief, or review it upon any matter decided on appeal for error apparent, or intermeddle with it, further than to settle so much as has been remanded. * * * After a mandate, no rehearing will be granted, * * * and on a subsequent appeal nothing is brought up but the proceeding subsequent to the mandate. [Himely v. Rose] 5 Cranch [313], 316, 3 L.Ed. [111] 112; [Browder v. McArthur] 7 Wheat. 58, 59, 5 L.Ed. 397; [The Santa Maria] 10 Wheat. [431], 443, 6 L.Ed. [359] 362.' "

See also, Galpin v. Page, 1873, 18 Wall. 350, 85 U.S. 350, 365, 21 L.Ed. 959; Insurance Group Committee v. Denver & R.G.W.R. Co., 1947, 329 U.S. 607, 67 S.Ct. 583, 91 L.Ed. 547; United States v. United States Smelting Co., 1950, 339 U.S. 186, 198, 70 S.Ct. 537, 94 L.Ed. 750; Brown v. Lanyon Zinc Co., 8 Cir., 1910, 179 F. 309, 310–311.

Thus it becomes the duty of this court to enter an order in accordance with the mandate of the United States Court of Appeals for the Eighth Circuit.

The mandate directs that this court "enter an Order of Injunction against the appellees herein, their successors, and the officers, agents, servants, employees and attorneys of the appellees and of their successors; and all persons in active concert or participation with the appellees or with their successors, enjoining them from taking any further steps or action, without the approval of

the said District Court, to transfer possession, control or operation, whether directly or indirectly, of any of the senior high schools or any other property or facilities of the Little Rock School District, to any organization or person, for carrying on any segregated school operations of any nature; enjoining them also from engaging in any other acts, whether independently or in participation with anyone else, which are capable of serving to impede, thwart or frustrate the execution of the integration plan mandated against them; and further providing that they shall take such affirmative steps as the said District Court may hereafter direct, to facilitate and accomplish the integration of the Little Rock School District in accordance with the Court's prior orders."

It should be noted that the mandate in addition to requiring the entry of an injunction permanently restraining the defendants and their successors in office from taking any other steps or actions to transfer possession, control or operation, directly or indirectly, of any of the senior high schools, or any other property or facilities of the Little Rock School District to any organization or person, for carrying on any segregated school operations of any nature, and from engaging in any other acts, either independently or in participation with others which are capable of serving to impede, thwart or frustrate the execution of the integration plan mandated against them, also requires that they shall take such affirmative steps as the District Court may hereafter direct to facilitate and accomplish the integration of the Little Rock School District in accordance with the court's prior orders.

In reference to the provision requiring the Board of Directors, their agents and others to take affirmative steps to facilitate and accomplish the integration, the court in a footnote declared that it was not the intention of the court that the Board of Directors should take only such affirmative steps to carry out the integration plan as might be expressly directed by the court, but that "appellees

[School Directors] have an obligation under the previous general order against them to move forward, within their official powers, to carry out the integration plan, to which they must commensurately respond on their own initiative."

The duty of the defendants to respond to the order of the court on their own initiative is required by the decisions of the Supreme Court of the United States and other courts that have considered the responsiblity of the local school authorities. In its opinion of September 29, 1958, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 1, supra, the Supreme Court said:

"It is, of course, quite true that the responsibility for public education is primarily the concern of the States, but it is equally true that such responsibilities, like all other state activity, must be exercised consistently with federal constitutional requirements as they apply to state action."

In 143 F.Supp. 855, 864, when this court had before it the petition of the Board of Directors for the approval of the plan for integration, said:

"It is not the duty or function of the federal courts to regulate or take over and operate the public schools. That is still the duty of the duly state-created school authorities * * *."

In the opinion of May 31, 1955, in Brown v. Board of Education, supra, [349 U.S. 294, 75 S.Ct. 756] the Supreme Court said:

"School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles."

The United States Court of Appeals for the Eighth Circuit in 257 F.2d 33 referred to the primary responsibility of the school authorities, and reaffirmed the principle that the school authorities

have the primary responsibility for solving the problem connected with the operation of integrated public schools.

Judge Lemley, in his decision of June 20, 1958, supra, recognized and approved the principle.

Therefore, this court is emphasizing the fact that the duty to comply with the orders of the court rests primarily upon the Board of Directors and those in their employ, and this responsibility and duty must be met and discharged unless legally prevented.

In considering that portion of the mandate which provides, "that they [the Board of Directors] shall take such affirmative steps as the said District Court may hereafter direct, to facilitate and accomplish the integration of the Little Rock School District in accordance with the Court's prior orders," it must be borne in mind that the plaintiffs in their motion that was under consideration by the Court of Appeals asked only:

"Plaintiffs, for themselves and all other members of the class which they represent, move this Court for (1) an order restraining defendants, their agents, successors or assigns, from conveying, leasing or otherwise transferring title, possession or operation of Central High School, or any other public school property, to the Little Rock Private School Corporation or any other corporation, association, partnership or individual, or (2) in the alternative, for an order decreeing that if said Central High School or any other public school property is conveyed, leased or otherwise transferred, to the Little Rock Private School Corporation, or any other corporation, association, partnership, or individual, the conveyance, lease or transfer must provide that said schools be operated pursuant to the plan of integration heretofore approved by this Court and must not directly or indirectly operate so as to discrim-

inate against the members of any race, including especially plaintiffs and the other members of the class which they represent."

At the hearing the contentions of the parties were fully stated by their respective attorneys, and the contentions of the United States were stated by the attorneys appearing amicus curiae from the Department of Justice, and oral arguments were submitted in support of the various contentions. It is not necessary to set forth the contentions or the arguments in support thereof. Suffice it to say that the court, in formulating the order to be entered herein, has given full consideration to such contentions and arguments.

■ In the case of Briggs v. Elliott, D.C.1955, 132 F.Supp. 776, 777, a three-judge court sitting in the Eastern District of South Carolina composed of Circuit Judges John J. Parker,[1] Armisted M. Dobie, and District Judge George Bell Timmerman, construed the holding of the Supreme Court of the United States in the Brown cases as follows:

"It has not decided that the federal courts are to take over or regulate the public schools of the states. It has not decided that the states must mix persons of different races in the schools * * * or must deprive them of the right of choosing the schools they attend. What it has decided, and all that it has decided, is that a state may not deny to any person on account of race the right to attend any school that it maintains. This, under the decision of the Supreme Court, the state may not do directly or indirectly * *. The Constitution, in other words, does not require integration. It merely forbids discrimination. It does not forbid such segregation as occurs as the result of voluntary action. It merely forbids the use of governmental power to enforce segregation."

1. Judge Parker, Chief Judge of the U. S. Court of Appeals for the Fourth Circuit, died March 17, 1958.

This court is of the opinion that the constitutional principles involved herein were and are correctly stated and defined in the statement quoted above.

The United States Court of Appeals for the Eighth Circuit, in its opinion of November 10, 1958, 261 F.2d 97, quoted from the opinion of the Supreme Court of September 29, 1958, as follows:

"In short, the constitutional rights of children not to be discriminated against in school admission on grounds of race or color declared by this Court in the Brown case can neither be nullified openly or directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes for segregation whether attempted 'ingeniously or ingenuously'."

and stated:

"But we do not now assume to deal with the significance of these holdings and expressions in relation to the present situation, at least not beyond the acts and contemplated actions of the School Board, since these alone are adjudicatorily before us."

■ The Court of Appeals did direct this court to enter an order of injunction against the parties hereto enjoining them from taking any further steps or actions, without the approval of this court, to transfer possession, control or operation, whether directly or indirectly, of any of the senior high schools, or any other property or facilities of the Little Rock School District to any organization or person, for carrying on any segregated school operations of any nature; and also to enjoin the defendants from engaging in "any other acts," either independently or in participation with any one else, which are capable of serving to impede, thwart or frustrate the execution of the integration plan mandated against them. But the Court of Appeals did not hold that this court should direct and order the Board of Directors of the Little Rock School District to open the public high schools. However, the mandate does direct that the Board of Directors shall take such affirmative steps as the District Court may direct to facilitate and accomplish the integration of the Little Rock School District in accordance with the court's prior orders. Clearly this provision of the mandate, when interpreted in connection with its other provisions and the issues that were before the court, does not require this court to direct that the high schools be opened, but implicit in the order is the requirement that when and if the high schools are opened, they must be operated as a non-segregated system.

■ The court presumes that the present Board of Directors, their agents and employees will not attempt to evade their responsibility and duty imposed upon them by the decisions of the Supreme Court of the United States if they are required or permitted to operate such schools by the state law. For this and other reasons discussed above, the court refrains for the present from specifying the affirmative steps that must be taken to operate the public schools as a racially non-discriminatory system.

The court is not unmindful of the task that is confronting the Board of Directors and their employees. The obligation resting upon them as such Board must be met and discharged in good faith in conformity with the prior mandated orders of the courts, and if a public school system is operated, there seems to be no alternative except to operate the system in accordance with the plan that was approved by the order of August 28, 1956, or other plan that conforms to the constitutional requirements as declared in the decisions of the Supreme Court of the United States.

The formal order of this court is being filed with the Clerk of the Court for entry and a copy appended to this opinion.[2]

2. Separate orders relating to the parties hereto and appearances herein, as raised by the motions presented to the court on the date of the hearing, have been entered.

## Judgment.

On January 6, 1959, the date heretofore fixed for the purpose of determining the provisions and terms of the judgment to be entered by this court in accordance with directions contained in the mandate of the United States Court of Appeals for the Eighth Circuit, issued December 2, 1958, and filed herein December 4, 1958, the plaintiffs appeared by their attorneys, Messrs. Thurgood Marshall and Wiley A. Branton, the defendants appeared by their attorneys, Messrs. Pat Mehaffy, Herschel H. Friday, Jr., and Robert V. Light, of the firm of Mehaffy, Smith & Williams, and the United States of America, amicus curiae, appeared by Messrs. Osro Cobb and Donald B. MacGuinneas, the same is submitted upon the said mandate and the opinion of the United States Court of Appeals for the Eighth Circuit, dated November 10, 1958; the oral argument of the attorneys for the respective parties and for the United States of America as amicus curiae, and upon consideration and in accordance with the directions contained in said mandate and opinion,

It Is Ordered, Adjudged and Decreed:

1. That this court's order entered September 25, 1958, denying and dismissing plaintiffs' motion for further relief be and is set aside and vacated.

2. That defendants, Ed I. McKinley, Jr., Everett A. Tucker, Jr., Ted L. Lamb, Russell H. Matson, Robert W. Laster, Ben D. Rowland, Sr., and Terrill E. Powell, and officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them, are hereby enjoined from taking any further steps or action without the express approval of this court:

(a) to transfer possession, control or operation, whether directly or indirectly, of any of the senior high schools or any other property or facilities of the Little Rock School District, to any organization or person for carrying on any segregated school operations of any nature;

(b) from engaging in any other acts, whether independently or in participation with any one else, which are capable of serving to impede, thwart or frustrate the execution of the integration plan mandated against them and which was approved May 24, 1955, by the then Board of Directors of the Little Rock School District.

3. That the said defendants are further directed, in accordance with the said mandate, to move forward within their official powers to carry out the integration plan, and to take affirmative steps on their own initiative consistent with their official powers to facilitate and accomplish the operation of the Little Rock School District on a non-discriminatory basis.

4. That within thirty days from the date hereof said defendants shall submit to the court a specific and detailed report of the affirmative steps they have taken and propose to take in compliance with this order. Prior to filing, such report shall be served upon the plaintiffs and the United States of America.

5. The court reserves jurisdiction herein to enter such further orders as may be necessary and appropriate.