Sylvia Dumas VICK, an infant, by Harvey O. Vick and Mrs. Harvey O. Vick, her father and mother and next friends; Brenda Kaye Carson, an infant, by J. H. Carson and Mrs. Mamie Carson, her father and mother and next friends; Juanita Morris, an infant, by Richard Morris and Mrs. Richard Morris, her father and mother and next friends; and Harvey O. Vick, Mrs. Harvey O. Vick, J. H. Carson, Mrs. Mamie Carson, Richard Morris and Mrs. Richard Morris, Plaintiffs,

v.

COUNTY BOARD OF EDUCATION OF OBION COUNTY, TENNESSEE, and O. C. Berry, J. C. Roberts, Virgil Roberts, Chester Thompson, W. H. Caudel, Earl Bryant, Sam Cutler, Marvin Harper, Archie Cultra and W. T. Garrigan, Jr., Board Members, who together, as such Members, constitute the County Board of Education of Obion County, Tennessee; and C. D. Parr, County School Superintendent and/or Superintendent of Public Instruction of Obion County, Tennessee, Defendants.

No. 1259.

United States District Court
W. D. Tennessee, E. D.

June 4, 1962.

Avon N. Williams, Jr., Looby & Williams, Nashville, Tenn., J. Emmett Ballard, Jackson, Tenn., and Jack Greenberg, New York City, for plaintiffs.

Fenner Heathcock, Heathcock, Elam & Cloys, Union City, Tenn., for defendants.

BROWN, District Judge.

This cause first came on for hearing on December 15, 1961, on the application of plaintiffs for an injunction against the operation of a compulsory racially segregated public school system in Obion County, Tennessee. Plaintiffs also prayed for an injunction against the assignment of teachers and supporting personnel on the basis of race or color. Defendants, in their answer, admitted they are operating a compulsory racially segregated school system which is therefore unconstitutional and offered to bring about desegregation on the basis of a grade a year. After hearing proof and argument of counsel, this Court delivered an opinion from the bench (6 Race Rel. L.Rep. 1001 (1961)) in which it denied plaintiff's prayer for an injunction, ordered defendants to present a plan by April 1, 1962 for complete desegregation of the public school system effective for the school year 1962–1963, and took under advisement the prayer for injunctive relief with respect to teachers and supporting personnel.

Pursuant to the direction of the Court, defendants filed a proposed plan to which plaintiffs filed objections, and this cause again came on for hearing on May 11, 1962 for consideration of the proposed plan and the objections thereto. Additional proof was offered by both sides to the litigation and further argument of counsel was likewise had. The provisions of the proposed plan as well as the objections thereto will appear in this

memorandum opinion hereafter and therefore they will not be set out at this point.

Defendants offered in evidence (Exhibit 3) a map showing the location of existing elementary and secondary schools operated by the Obion County Board of Education, showing the geographical distribution in the county of Negro children of school age and the proposed boundary lines for elementary and secondary school districts.

With respect to elementary school districts, Cloverdale, Dixie, Hornbeak, Kenton, Mason Hall and Troy have no Negro children of elementary school age living within their borders and therefore create no problem at this time as to· desegregation. There are Negro children of this age living in the Rives district and the Board plans to have them attend the heretofore "white" Rives elementary school. There are also Negro children of this age living in the Obion, South Fulton and Woodland Mills elementary school districts, and the Board proposes to continue to operate both the heretofore "white" and "Negro" elementary schools in those districts, giving both white and Negro children within the district a choice as to which they will attend. It appears that the Board has also operated, only for Negroes, a Kenton elementary school located across the line in Gibson County which is attended only by Negro children, all of whom live in that county. This presents an anomalous situation and no clear reason for its exıstence has been shown.

With respect to secondary school districts, Kenton and Mason Hall have no Negro children of that age living within their boundaries and therefore create no problem at this time as to desegregation. There are Negro children of this age living within the boundaries of the South Fulton secondary school district, and the Board proposes to continue to operate both the heretofore "white" and "Negro" secondary schools in this district, giving both the white and Negro children within the district a choice as to which school they will attend. The Board proposes that all other Negro children of secondary school age in the County, all of whom now live in the Obion Central secondary school district, will be assigned to attend Obion Central High, except that those who choose may attend Miles High, which is a school for Negroes operated by the City of Union City. The school system of Union City is the only one in the County not operated by the defendant Board.

Inasmuch as the principal issue raised at the hearing by the plaintiffs has to do with provisions in the plan allowing a choice in some instances, the Court will deal with that hereinafter and will now deal with provisions as to which there were no objections, and dispose of objections to the plan which raised no substantial issue.

 The proposed plan provides generally that transfers may be had for good cause shown but also provides that among the factors which will be considered in granting a transfer are, for example, the fact that a white student would otherwise be required to attend a school previously attended by Negroes only. This provision seems to have been adopted verbatim from the so-called Nashville plan. While such a provision has been held by the Court of Appeals for the Sixth Circuit (Goss v. Board of Education, City of Nashville, 301 F.2d 164 (6th Cir. 1962), Maxwell v. County Board of Education of Davidson County, Tennessee, 301 F.2d 828 (6th Cir. 1962) and Kelley v. Board of Education of City of Nashville, 270 F.2d 209 (6th Cir. 1959), cert. denied, 361 U.S. 924, 80 S.Ct. 293, 4 L.Ed.2d 240) not to be unconstitutional on its face, it appears to the Court that the presence of this provision in the plan might well create a constitutional issue which should be avoided. See: Boson v. Rippy, 285 F.2d 43, 48 (5th Cir. 1960). In any event, it would certainly not add to the plan as an instrument in bringing about desegregation and the Court directs that it be eliminated. Similarly, provisions in the plan for the preservation of rights created by the Tennessee Pupil Placement or Assignment Law, T.

C.A. § 49–1741 et seq., is not necessary as this law is not a vehicle for desegregation and therefore the provision has no proper place or function in the plan. See: Northcross v. Board of Education of the City of Memphis, 302 F.2d 818 (6th Cir. 1962).

■ The Court believes that paragraph 9 of the Judgment establishing the Chattanooga plan (Mapp v. Board of Education of Chattanooga (E.D.Tenn. April, 1962), for opinion see: 203 F. Supp. 843) is a proper one and should be inserted in this plan. This provision allows the Board to adopt any admission or transfer plan as may in its judgment be reasonable or proper for the operation of the Obion County Public Schools, provided that no such plan may be based on race or color or have as its primary purpose the delay or prevention of desegregation in accordance with the plan contemplated by this opinion. This provision will be substituted for provisions contained in paragraphs 3, 4, 5 and 6 of the plan which deal with admissions and transfers.

■ The Board has indicated that there will be no segregation with respect to transportation to and from the schools and that all facilities in the schools, such as cafeterias, as well as school activities, including athletics, will be desegregated. This is approved by the Court and will be covered by the plan.

■ The school for educable mentally retarded children at Troy will be, according to the Board, desegregated beginning with the 1962–1963 school year and Negro children will be admitted on the same basis as white children. This is approved by the Court and should be inserted in the plan.

It appears that the school districts under the proposed plan have the same boundaries as have heretofore existed for white schools. In any event, it is not contended by plaintiffs that the boundaries of the districts have been gerrymandered in any way.

As stated, the only real controversy which developed at the hearing held for the consideration of the plan had to do with the provisions in the plan allowing a choice with respect to the schools to be attended. Plaintiffs insist that this choice should be removed from the plan and in effect that the schools heretofore used by Negroes should be abandoned.

The proof showed without question that the schools heretofore attended only by white students in the districts wherein there would be a choice have sufficient capacity to accommodate both the white and Negro students in the district. The proof also showed that the schools heretofore used by the Negroes only in these districts are not equal, with respect to tangible factors, to the white schools in these districts.

In opposing the choice provisions in the proposed plan, plaintiffs contend, first, that the mere existence of the choice would be unconstitutional because this would allow segregation based on race or color under the aegis of state authority. Stated differently, plaintiffs contend that where, as here, the purpose of allowing Negro children to make such a choice is to afford them the opportunity of attending a segregated school, the provision is unconstitutional because state authority cannot constitutionally be so exercised.

■ Assuming that the choice is free and unfettered, the existence of the choice is not unconstitutional unless the Constitution requires compulsory integration rather than only an abolition of discrimination. This Court, after reviewing the authorities, has concluded that the Constitution requires only an abolition of discrimination based on race or color.

The Supreme Court in the second Brown opinion, Brown v. Board of Education, 349 U.S. 294, 298, 75 S.Ct. 753, 755, 99 L.Ed. 1083 (1954), states that " * * * racial discrimination in public education is unconstitutional * * *" and that (349 U.S. at 300, 75 S.Ct. at 756) plaintiffs therein had a right to admission to public schools " * * * on a nondiscriminatory basis." Moreover, in Cooper v. Aaron, 358 U.S 1, 7, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958)

the Supreme Court said " * * * State authorities were thus duty bound to devote every effort toward initiating desegregation and bringing about the elimination of racial discrimination in the public school system."

The only cases which discuss this problem are Briggs v. Elliott, 132 F. Supp. 776 (E.D.S.C. 1955) and School Board of City of Charlottesville, Va. v. Allen, 240 F.2d 59 (4th Cir. 1956), cert. denied, School Board of Arlington County v. Thompson, 353 U.S. 910, 77 S.Ct. 667, 1 L.Ed.2d 664, both of which support the view of the law held by this Court. In the Briggs case, supra, the decision was rendered by a three-judge court presided over by Circuit Judge Parker and on which Circuit Judge Dobie sat. In the per curiam opinion in that case it is said, 132 F.Supp. at 777:

"Having said this, it is important that we point out exactly what the Supreme Court has decided and what it has not decided in [the Brown] case. It has not decided that the federal courts are to take over or regulate the public schools of the states. It has not decided that the states must mix persons of different races in the schools or must require them to attend schools or must deprive them of the right of choosing the schools they attend. What it has decided, and all that it has decided, is that a state may not deny to any person on account of race the right to attend any school that it maintains. This, under the decision of the Supreme Court, the state may not do directly or indirectly; but if the schools which it maintains are open to children of all races, no violation of the Constitution is involved even though the children of different races voluntarily attend different schools, as they attend different churches. Nothing in the Constitution or in the decision of the Supreme Court takes away from the people freedom to choose the schools they attend. The Constitution, in other words, does not require inte-

gration. It merely forbids discrimination. It does not forbid such segregation as occurs as the result of voluntary action. It merely forbids the use of governmental power to enforce segregation. The Fourteenth Amendment is a limitation upon the exercise of power by the state or state agencies, not a limitation upon the freedom of individuals."

■ As a second ground for opposing the choice provision in the proposed plan, plaintiffs contend that, as a practical matter, there can be no free choice so far as the Negro children are concerned.

In support of this contention, plaintiffs offered proof, and the Court so finds, that the Negroes in rural Obion County generally occupy a subservient economic position. Consequently, plaintiffs argue, economic pressure will be brought to bear upon the Negro parents to prevent the exercise of a free choice. However, while conceding this possibility, this Court cannot now rule, as a matter of law, that the provision allowing a choice is unconstitutional because there is a possibility there will be such pressure which may prove to be effective. In the event that, upon the registration of the Negro students in June, it should appear that economic or other pressure, overtly or covertly, is brought to bear on the Negro parents and students, this Court, having retained jurisdiction, might find it necessary to eliminate the choice provision from the plan in order to effectuate the mandate of the Supreme Court in the Brown decisions. See: Kelley v. Board of Education of the City of Nashville, supra, 270 F.2d at 230. Moreover, economic pressure aimed at depriving a citizen of his federally-created rights may be prevented by court action initiated by the United States. U. S. v. Beaty, 288 F.2d 653 (6th Cir. 1961).

A second argument of plaintiffs that the Negro parents and students will not be able to exercise a free choice is that, due to ignorance in large part brought about by the policies of the Board itself, they will not understand the notices the

Board proposes to use (copies of which were exhibited at the hearing) to apprise the parents and students that they have a choice and that, due to this same ignorance, the Negroes will not realize the advantages of attending admittedly better schools. Plaintiffs have no quarrel with the wording or contents of the notice. This Court does not believe, from the proof, and therefore cannot find, that the parents and students will not understand the notices or that they will not be able to make an intelligent judgment as to whether they should register in the better school available. However, as a safeguard, the Court believes that counsel for plaintiffs should be furnished with the names and addresses of parents of all Negro school children who will be given a choice as to the school to attend, and this must be furnished prior to the school registration which the Board intends to conduct in the middle of June.

As heretofore stated, with respect to Negro students of secondary school age who now live in the Obion Central school district, the Board proposes that they be given a choice as to whether they will attend Obion Central or Miles High in Union City. It will be noted that the Board does not propose to give, and no doubt could not give, white students in the Obion Central district the same choice. Accordingly, what the Court has said as to the constitutionality of the provisions allowing a choice does not apply here and therefore Negro children residing in the Obion Central district must not be tendered that choice.

As stated, the Board is maintaining a school for Negroes which is called Kenton but is actually located across the line in Gibson County and is attended only by students who live in Gibson County. While it appears that there is no legal obligation on the Board to maintain this school, so long as it does, it must afford the Negro children who attend this school an opportunity to attend Kenton "white" school in Obion County if they choose.

Although, as stated, there are several districts in which there are no Negro children of school age now living, the plan must provide that, in the event in the future such children should live in such districts, these children will be free to enter the heretofore "white" school in the district.

The plan should also provide that financing and budgeting for the school system or the individual schools must not in any wise be based on race or color.

The Court will retain jurisdiction of this cause so long as it is necessary to effectuate the desegregation of the Obion County School system as required by the Constitution of the United States. The Court will also continue to hold under advisement the prayer for injunctive relief with respect to teachers and supporting personnel pending the implementation of the plan for desegregation of the schools as to the students.