Brenda Kay MONROE et al.

v.

BOARD OF COMMISSIONERS OF the CITY OF JACKSON, TENNESSEE, et al. and County Board of Education of Madison County, Tennessee, et al.

Civ. No. 1327.

United States District Court
W. D. Tennessee, E. D.
May 21, 1964.

Avon N. Williams, Jr., Looby & Williams, Nashville, Tenn., J. Emmett Ballard, Jackson, Tenn., for plaintiffs.

Jack Manhein, Jackson, Tenn., Edwin F. Hunt, Nashville, Tenn., W. M. Shaw, Shaw & Shaw, Homer, La., Jack Kershaw, Nashville, Tenn., Russell Rice, Jackson, Tenn., for defendants.

BAILEY BROWN, District Judge.

This cause is before this court for consideration of a plan for desegregation of schools that has been filed, pursuant to order of Court, by the Board of Education of Madison County, Tennessee. This Court has heretofore held a hearing on the plan submitted by the City of Jackson, Tennessee and the plaintiffs' objections thereto and its memorandum decision dealing with the City's plan appears at 221 F.Supp. 968, 975.

Succinctly outlined, the plan submitted by the Board of Education of Madison County is as follows:

1. Segregation would be abolished in stages: grades 1 through 3 in the first year, grades 4 through 6 in the second year, grades 7 and 8 in the third year, and one additional grade each year thereafter.

2. With respect to desegregated grades, pupils would be entitled to be admitted to the school of their choice, provided the Board would have the right to transfer pupils, under non-discriminatory regulations, based on such factors as distance from school and achievement level. The right to choose would be a continuing one in the sense that a new choice could be made each year.

3. Transportation facilities, and school facilities, such as cafeterias, and school activities, such as athletics, would be desegregated.

4. The electronics course offered only at South Side High would be desegregated in the first year.

The plaintiffs, Negro citizens and parents of Madison County, have filed objections, stating, in general, that the plan proposed does not meet the requirement that schools be desegregated and at all deliberate speed. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955).

Madison County operates eight heretofore Negro grade schools and eleven heretofore white grade schools and operates two heretofore Negro high schools and three heretofore white high schools. The school population is approximately 3379 Negro and 4254 white or approximately 44% Negro and 56% white.

The average age of the Negro school buildings is 5.4 years (all having been constructed since the Brown decision), and the average age of the white school buildings is 22.6 years. Total cost of the nine Negro school buildings is $1,835,000 and total cost of the thirteen white school buildings is $3,290,000.

The average student-teacher ratio in the Negro schools is 32.3 to 1 and in the white schools is 29.2 to 1. All of the faculty in the Negro schools are Negroes and all of the faculty in the white schools are white. There are a total of 108 Negro teachers of whom 4 have master's degrees, 96 have bachelor's degrees, 4 have three years of college and 4 have two years of college. There are a total of 153 white teachers of whom 33 have master's degrees, 96 have bachelor's degrees, 10 have three years of college and 14 have two years of college. Salaries of Negro and white teachers who have the same educational qualifications, experience, et cetera are equal.

The curricula in the Negro and white schools are comparable, the only substantial difference being that the white high schools are teaching more classes of foreign languages and sciences than the Negro high schools are teaching. However, this results from the fact that the demand for such courses in Negro schools is not as great as in the white schools, and the Board offers such courses in Negro schools whenever the demand is sufficient to form a class.

The median achievement levels, determined by tests, of the Negro and white children are substantially the same in the beginning grades but by the time the pupils reach the fourth grade, the median achievement level of white students is substantially higher, and this disparity increases gradually in the higher grades. This disparity does not result from any inherent difference in the races; it results from a difference in cultural advantages present in the homes as well as a general lack of motivation of Negro pupils because of the disadvantage of living in a segregated community.

Historically, there has been no formal geographical zoning with respect to these schools, although, in general, the white and Negro pupils, because of convenience in school bus transportation, have attended the school nearest to their homes.

The Negro schools have been operated on a "split season" in that the school year begins around July 15, then recesses in September for four to seven weeks, then reconvenes for the completion of the school year. The purpose of this recess is to allow the children to harvest cotton. The white schools formerly recessed similarly, but this recess was abolished some years ago. There is no indication that a purpose of this recess of Negro schools is the preservation of segregation. The labor of these Negro pupils is needed by some of the parents as a matter of economic necessity—the parents being tenant farmers—but the total economic effect of the abolition of this split season cannot be determined from the evidence. This split season is undesirable from an educational point of view as it interferes with and has a detrimental effect on the teaching process.

The main points of conflict between the position of plaintiffs and the position of school Board are these:

1. Plaintiffs insist that desegregation for all grades be immediate beginning with the school year 1964–65 while the Board insists that it be gradual as set out in the proposed plan.

2. Plaintiffs insist that the Court order the Board to adopt a system of unitary non-racial geographical zoning with no transfers allowed except for reasons that are administrative and which are completely unrelated to racial preferences of the pupils and parents. The Board insists that Negro and white pupils be given a free choice as to which schools they will attend and that no formal geographical zones should be established.

3. Plaintiffs insist that the split season of heretofore Negro schools be abolished, and the Board insists that it not be abolished.

4. Plaintiffs insist that the faculties be integrated, and the Board insists that they not be.

### Rate of Desegregation

■ The second Brown decision, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), requires desegregation with all deliberate speed. The Supreme Court in the Memphis public parks case, Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963), indicated that a plan of desegregation of schools that would have met the test of deliberate speed if it had been adopted in 1955 would not necessarily meet that test now. Though this statement is *dicta*, it constitutes a clear indication of the Court's thinking on this question. In this connection, the Board contends that there is no obligation to institute a plan of desegregation until a formal demand is made by Negro pupils or parents. While the proof is not clear as to when such a demand was first made here, we are of the opinion that no such demand is necessary and that all Boards operating segregated school systems have the affirmative duty to adopt plans for desegregation whether or not demands have been made or a suit filed. Cooper v. Aaron, 358 U.S. 1, 7, 8, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958) and Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963).

■ In determining the amount of delay to be allowed in bringing about desegregation, there can be considered administrative problems, second Brown decision, supra, degree of equality of tangible factors of the Negro and white school systems, Boyce v. Board of Education of Humphreys County, 7 Race Rel. L.Rep. 372, 378, (M.D.Tenn.1961), and the good faith or lack of good faith of the school board as evidenced by voluntary efforts to comply with the law. Dove v. Parham, 181 F.Supp. 504, 513, (E.D.Ark.1960), aff'd 282 F.2d 256 (C.A. 8, 1960).

■ After considering all of the evidence in the case and the applicable law, we are of the opinion that the Board should not be required to desegregate all grades in one year. On the other hand, we are of the opinion that the proof does not justify the amount of time proposed by the Board. We are of the opinion that the first eight grades should be desegregated at the beginning of the school year 1964–65 and the last four grades should be desegregated at the beginning of the school year 1965–66.

### Geographical Zones

■ Plaintiffs, as previously indicated, contend that unitary non-racial geographical zones are constitutionally required, relying on Northcross v. Board of Ed. of City of Memphis, 6 Cir., 302 F.2d 818 (1962). While the Northcross opinion does state that unitary geographical zones should be established for each school in the City of Memphis, we do not believe the Court thereby held that geographical zones must be established in all cases. Certainly varying fact situations, including the non-existence of a history of geographical zoning, call for varying solutions. Under the Memphis plan for desegregation before the Court for review in Northcross, the then existing dual system of zoning for Negro and white schools would continue with the right of pupils of both races to apply for a transfer to a school of the opposite race under the Tennessee Pupil Assignment Law. We believe that the Court in Northcross intended to hold only that if geographical zones were to be used, the zones must be unitary and non-racial, and that it did not intend to hold that zones must always be employed.

■ Plaintiffs contend that the Constitution requires that Negro and white pupils be integrated, and that a system based on free and voluntary choice is unconstitutional. The reasons for plaintiffs' contentions in this respect are adequately outlined in our opinions in Vick v. County Bd. of Ed. of Obion County, Tennessee, 205 F.Supp. 436 (W.D.Tenn. 1962), and Monroe v. City of Jackson, 221 F.Supp. 968 (W.D.Tenn.1963), as plain-

tiffs there made the same arguments as are made here. We believe, on the contrary, that the Constitution requires only an abolition of discrimination based on race or color, and our reasons for this conclusion and the decisions on which we base it are likewise adequately outlined in these same opinions. See also the opinion in Goss v. Board of Ed. of City of Knoxville, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632 (1963), in which the Court said in connection with transfer provisions under a plan involving unitary geographical zones:

> " * * * [W]e note that if the transfer provisions were made available to all students regardless of their race and regardless as well of the racial composition of the school to which he requested transfer we would have an entirely different case. Pupils could then at their option (or that of their parents) choose, entirely free of any imposed racial considerations, to remain in the school of their zone or to transfer to another."

Accordingly, we believe that a plan for admissions and transfer based on free and voluntary choice is constitutional with or without geographical zoning.

We believe, however, that this system of free and voluntary choice, herein approved, should be implemented by specific provisions promoting such a choice having to do with notice of registration and registration at schools and we incorporate such provisions in the plan. We also believe that this freedom of choice should be implemented by provisions for admission which make clear that such standards as proximity to the school, achievement level and past conduct be applied in a non-discriminatory manner, and we have inserted such provisions in the plan.

### Abolition of "Split Season"

▪ We have concluded that the Constitution does not require the abolition of the "split season" in the heretofore Negro schools. There is no evidence that this practice has for its purpose the preservation of segregation. Moreover, while the split season may encourage some Negro pupils who desire such an arrangement to seek admission at heretofore Negro schools, it may also cause other Negro pupils who disapprove of the arrangement to seek admission in the heretofore white schools. It goes without saying that this Court should act with caution in abolishing the split season in view of the indeterminate economic consequences of such action.

### Desegregation of Faculties

▪▪ It is true that this Court may consider in this suit, in which no Negro teachers are plaintiffs, the desegregation of faculties to make effective desegregation of the schools generally. Mapp v. Board of Ed. of City of Chattanooga, 319 F.2d 571 (C.A.6, 1963). We believe, however, that the plan as approved meets constitutional standards without providing at this time for a plan for desegregation of faculties and accordingly the application of plaintiffs for such relief will be held under advisement.

It is, therefore, ordered, adjudged and decreed that defendant institute the following plan:

#### I

For the school year 1964–1965 and thereafter, grades 1 through 8 will be desegregated and for the school year 1965–1966 and thereafter, grades 9 through 12 will be desegregated, all in accordance with the terms and provisions of this plan.

#### II

With respect to the grades which have been desegregated, each pupil, white or Negro, who is entitled to attend the schools operated by the School Board of Madison County shall be entitled to attend the school of his choice without consideration of the race or color of the pupil.

#### III

To implement this choice, each school shall hold a registration not later than June 20, 1964 for all pupils, white or Negro, who desire to attend that school

during the coming school year and a new registration for all such pupils entitled to attend these schools shall be held not later than June 20 of each of the succeeding four years.

## IV

Registration may be effected by the pupil applying or by the parent or person having custody of the pupil.

## V

All pupils who register at a particular school will be accepted or rejected without discrimination based on race or color.

## VI

Such considerations as mental capacity, achievement level and prior record of conduct may be considered in determining whether these applicants will be admitted to the school provided such considerations are applied without respect to race or color. For example, if achievement level is to be considered, Negro applicants to a particular school may not be rejected unless white applicants to that school are rejected under precisely the same standards.

## VII

In the event that the number of applicants for a particular grade in a school is greater than the reasonable capacity of that school in that grade, priority of admission will be given to applicants who live closest, in a direct line, to the school.

## VIII

The fact that a pupil has heretofore attended a particular school will not give him a prior right to attend that school if to do so would deprive a pupil of another race otherwise entitled under this plan to attend from attending that school.

## IX

In the event that an applicant is rejected by the school because of lack of school capacity or other reason allowed under this plan, the applicant will be so advised in writing within ten days following registration and thereafter the applicant may, within ten days after receiving such notice, be registered in and be accepted by any other county school under the terms and conditions of this plan. If the applicant is rejected by the school of second choice, the applicant will be assigned to a school by the Board or its authorized representative, such assignments to be without discrimination based on race or color.

## X

The Board will give notice, by mail, to parents or persons having custody of all Negro and white children of school age that they may register in the school of their choice, whether it is a heretofore white or Negro school, such notice to be given not later than ten days before registration for the 1964–1965 school year and such notice to be given not later than ten days before registration for each of the succeeding four years. A copy of the form of notice to be used will be furnished to counsel for plaintiffs not later than ten days before notice is to be given.

## XI

The Board may adopt any admission or transfer policy not inconsistent with this plan and which does not have a purpose to prevent or delay desegregation in accordance with this plan.

## XII

Beginning with the school year 1964–1965, pupils will be entitled to be enrolled in the electronics course at South Side High without discrimination based on race or color.

## XIII

The Board may set the days of attendance at any school as it chooses, provided that this does not interfere with the operation of the plan for abolition of discrimination set out in this order.

## XIV

Transportation facilities and school facilities, including cafeterias, as well as school facilities, including athletics, will be desegregated.

586

## XV

All considerations of race or color shall be eliminated in budgeting, financing and building programs of the School Board.

## XVI

The application of plaintiffs for desegregation of faculties will be held under advisement pending the implementation of this plan.

## XVII

The Court will retain jurisdiction so long as necessary to effectuate the desegregation of the school system as required by the Constitution of the United States.

All of which is ordered, adjudged and decreed this 21st day of May, 1964.