Earlis JACKSON, on Behalf of His Infant Children, Ceiners Jackson, Loretta Jackson, Claudette Jackson, Rita Jane Jackson and Earlis Jackson, Jr., Appellants,

v.

The MARVELL SCHOOL DISTRICT NO. 22, a Public Body Corporate; C. G. Cowsert, Superintendent of the Marvell School District No. 22; and the England Building and Material Company, a Corporation, Appellees.

Ceiners JACKSON, Paulette Jackson, Claudette Jackson, Rita Jane Jackson, Earlis Jackson, Jr., and Luretta Jackson, Minors by Their Father and Next Friend, Earlis Jackson, et al., Appellants,

v.

The MARVELL SCHOOL DISTRICT NO. 22 and C. G. Cowsert, Superintendent of Schools, Appellees.

Nos. 19746, 19797.

United States Court of Appeals
Eighth Circuit.

Oct. 2, 1969.

Rehearing Denied Oct. 28, 1969.

Norman J. Chachkin, New York City, for appellants; Jack Greenberg, New York City, John W. Walker and Burl C. Rotenberry, Little Rock, Ark., and George Howard, Jr., Pine Bluff, Ark., with him on the brief and reply brief.

Robert V. Light, Little Rock, Ark., for appellees; Herschel H. Friday and G. Ross Smith, Little Rock, Ark., and Charles B. Roscopf, Helena, Ark., with him on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES, BLACKMUN, GIBSON, LAY, HEANEY and BRIGHT, Circuit Judges, En Banc.*

PER CURIAM.

The crucial question for decision in these consolidated cases is whether the appellees have discharged their responsibility "to achieve a system of determining admission to the public schools on a non-racial basis * * *." Brown v. Board of Education, 349 U.S. 294, 300–301, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955) (Brown II); Green v. County School Board of New Kent County, 391 U.S. 430, 431–432, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).

The controversy is centered on the freedom-of-choice plan adopted by the School Board in September, 1965, approved by the District Court for the Eastern District of Arkansas, Honorable Oren Harris, on December 21, 1966, in the action filed by appellants on August 17, 1966 (our No. 19,746), sanctioned in principle by this court, Jackson v. Marvell School District No. 22, 389 F.2d 740 (8th Cir. 1968) (Jackson I), and amended April 9, 1968, in an effort to comply with the deficiencies delineated in our previous opinion. The second suit, our No. 19,797, was filed on July 10, 1967. In that action appellants sought to enjoin additional construction on the site occupied by the all-Negro Tate High School on the ground that such construction would tend to perpetuate the dual educational system based on race. The validity of the freedom-of-choice plan also was challenged. Injunctive relief was not granted, construction of the additional building has been completed; therefore, that phase of the second case has been rendered moot.

Reference to our opinion in *Jackson I, supra,* will disclose relevant information pertinent to the issue presented here.

Following remand by us of *Jackson I, supra,* and subsequent to the unanimous decisions of the Supreme Court in Green v. County School Board of New Kent County, *supra;* Raney v. Board of Education of Gould School District, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727, and Monroe v. Board of Commissioners of

---

* Judge Mehaffy took no part in the consideration or decision of these appeals.

382

City of Jackson, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733, decided May 27, 1968, appellants, by motion, again challenged the freedom-of-choice plan and requested the district court to require the school board to adopt and implement a plan of desegregation which would comport with the teachings of the Supreme Court in the trilogy of freedom-of-choice cases cited above.

In order to resolve the issue an evidentiary hearing was held by the district court on August 8, 1968. The two actions were consolidated for all future proceedings since they presented common questions of fact and law.

At the conclusion of the hearing Judge Harris, in a soundly reasoned discussion from the bench, which we treat as a memorandum opinion,[1] unequivocally found that, in light of *Green, Raney, Monroe*, and our opinion in *Jackson I, supra*, a freedom-of-choice plan could not bring about meaningful desegregation in the district.

We extract from Judge Harris' opinion several statements which attest to his pronounced attitude at that time.

"Now the testimony here has made it very clear to the Court that in consideration of what the Supreme Court said, which is the last statement on this question, the procedure of freedom-of-choice cannot be said to be unconstitutional per se, but in each of those three cases, under the facts and circumstances, it could not provide a constitutional procedure."

\* \* \* \* \* \*

"I was somewhat awed with the statement by the superintendent that the most important item of the school here was actually the problem of freedom-of-choice. If you've got something that doesn't work then we better look for something else, and that is precisely what this Court is going to do."

"It is quite obvious to me that the freedom-of-choice system is not work-

ing for this district. It is clear from the testimony and the record presented here that it will not work, that you are not going to resolve this problem with this kind of program. \* \* \* "

\* \* \* \* \* \*

"I am therefore going to cancel and disapprove your proposed desegregation plan of freedom-of-choice. \* \* \* "

\* \* \* \* \* \*

" \* \* \* I am saying that for this school district under the circumstances freedom-of-choice is out the window. There is no need to pursue a course that has already run out and is no good."

On August 29, 1968, the district court filed its formal order which recites in pertinent part:

"The Plan of Desegregation of Marvell School District No. 22 proposed on November 25, 1966, and amended April 9, 1968, is hereby disapproved as an unacceptable method for the operation of this school on a constitutional basis as interpreted by the Supreme Court in Green v. County School Board of New Kent County (No. 695 decided May 27, 1968).

"The defendants are hereby ordered to propose an alternate plan for the conversion of the school system to a unitary system in accordance with the decisions of the Supreme Court made May 27, 1968, for all students in attendance, and such plan shall be presented to the Court on or before February 1, 1969. Upon the filing of said plan with the Court and after due notice, a hearing will be held at a day certain to be determined by the Court.

"The Court finds that the presently existing freedom of choice plan as amended, notwithstanding its unacceptability under the constitutional test, is the only practical method of operation of the school system during the interim period for the school year 1968–69 until said new plan is approved by the Court. Therefore, the defendants shall operate its school

1. The court's discussion is embodied in the transcript and consumes fourteen typewritten pages.

system under said existing plan until the new plan is approved by the Court."

Instead of filing a plan as directed by the court, the appellees filed a report on February 3, 1969, in which they took issue with the court's prior order. In their report appellees asserted that freedom-of-choice "is the only feasible procedure in the assignment of students in this system; that there is no feasible alternative." They asserted further that if the court's order was not rescinded, a majority of the white students would be withdrawn from the schools, occasioning such disruption in the system that material damage to the educational program in the district would ensue.

Appellants responded by a motion to require the appellees to present an alternative plan as previously directed. Another evidentiary hearing was held on March 31, 1969. At the conclusion of this proceeding Judge Harris ruled from the bench that he would modify his prior order "in which I disapproved the continuation of freedom of choice in the operation of the schools of this district * * *." On April 14, 1969, an order was filed directing the appellees to "distribute choice forms to all students in attendance at any school in the district not later than April 15, 1969," and to report to the court not later than May 24, 1969, "the racial allocation of students * * * produced by the choices of the students and their parents."

Appellees filed a report on May 22, 1969, which shows the racial allocation of students pursuant to choices. On June 13, 1969, the court entered another order approving the continued use of the freedom-of-choice procedure for the 1969–70 school year.

In these appeals appellants challenge the orders of the court following the March 31 hearing. We hold for reasons stated below that the court erred in rescinding its order of August 29, 1968, and we remand to the district court for further proceedings.

Prior to the decisions in the trilogy of *Green* cases, the Supreme Court had not explicitly determined the constitutional effectiveness of freedom-of-choice desegregation plans. We had approved implementation of such plans, but "solely as a transitional program to achieve a unitary school system." Kemp v. Beasley, 389 F.2d 178, 181 (8th Cir. 1968) (Kemp II). *Green* and its companion cases have established the standards by which all freedom-of-choice desegregation plans must now be judged.

"We do not hold that 'freedom of choice' can have no place in such a plan. We do not hold that a 'freedom-of-choice' plan might of itself be unconstitutional, although that argument has been urged upon us. Rather, all we decide today is that in desegregating a dual system a plan utilizing 'freedom of choice' is not an end in itself. * * Where it offers real promise of aiding a desegregation program to effectuate conversion of a state-imposed dual system to a unitary, non-racial system there might be no objection to allowing such a device to prove itself in operation. On the other hand, if there are reasonably available other ways, such for illustration as zoning, promising speedier and more effective conversion to a unitary non-racial school system, 'freedom of choice' must be held unacceptable." 391 U.S. at 439–441, 88 S.Ct. at 1695, 1696.

In addition, the *Green* Court severely criticized the slow pace at which school desegregation has been moving.

"Moreover, a plan that at this late date fails to provide meaningful assurance of prompt and effective disestablishment of a dual system is also intolerable. 'The time for mere "deliberate speed" has run out,' Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 234, 84 S.Ct. 1226, 1235, 12 L.Ed.2d 256; 'the context in which we must interpret and apply this language [of *Brown II*] to plans for desegregation has been

significantly altered.' Goss v. Board of Education of City of Knoxville, Tenn., 373 U.S. 683, 689, 83 S.Ct. 1405, 1409, 10 L.Ed.2d 632. See Calhoun v. Latimer, 377 U.S. 263, 84 S.Ct. 1235, 12 L.Ed.2d 288. The burden on a school board today is to come forward with a plan that promises realistically to work, and promises realistically to work *now.*" *Id.* at 438–439, 88 S.Ct. at 1694.

■ Thus, a freedom-of-choice desegregation plan can now receive judicial approval only if two conditions are met. First, the plan must offer genuine promise of promptly and effectively eliminating a state-imposed dual system of schools, and second, the plan must be the most feasible one available to the school board, considered in light of the circumstances present and the options available.

In this case, the School Board is faced with a heavy burden in light of *Green* to justify continued retention of the freedom-of-choice plan in the Marvell school system. The factual situation in this district is strikingly similar to the New Kent County District discussed in *Green.* In each a majority of the students in the district is Negro; the school system was originally established as a segregated system for white and Negro children under compulsion of state law; separate schools with predominantly white and all-Negro student bodies are still maintained; and the local school board made no effort to desegregate the school system until 1965 when a freedom-of-choice plan was adopted in order that the district remain eligible for federal financial aid. In *Green,* the Court found that only 15 percent of the Negro school children in the district attended previously all-white schools in 1967–68. Here, the percentage of Negro students attending the previously all-white Marvell Elementary and High Schools was 13.2 in 1967–68, 12.7 in 1968–69, and a projected figure of 13.9 in 1969–70. The only difference between *Green* and this district is that 36 white children have chosen to attend the formerly all-Negro Tate Elementary School in Marvell, along with 660 Negro children, in 1969–70. In New Kent County, as in many other districts in the South, not one white child had chosen to attend any all-Negro school.[2]

We do not, however, regard this difference as significant. The Supreme Court unquestionably has held that a system which still maintains racially identifiable schools, a "white" school and a "Negro" school instead of just "schools," does not satisfy the requirements of the Constitution. Green v. County School Board of New Kent County, *supra* at 440, 88 S.Ct. 1689. The admittance of 36 white students into a formerly all-Negro school still attended by 660 Negroes cannot be said to have the effect of casting off the school's racially identifiable cloak.

The appellees have sought to sustain the district court's action by arguing that the freedom-of-choice plan is the only feasible method of effectively desegregating the district. It is contended that the general hostility of the white patrons of the district against rapid and complete conversion to a unitary system will result in a virtually complete white student boycott of the public schools. Appellees further maintain that *re*segregation of the public schools will be the inevitable consequence. They rely upon language in *Green* which allows continued freedom-of-choice where there are no other "feasible" alternatives which are shown to be "more promising in their effectiveness." Green v. County School Board of New Kent County, *supra* at 439, 88 S.Ct. 1689. Apparently, this argument is similar to that advanced by the Altheimer School District and rejected as speculative by the district court in Kelley v. Altheimer, Arkansas Public School District No. 22,

2. The May 22, 1969, racial assignment report of appellees shows that no white student chose to attend Tate High School in Marvell and it would thus continue to be all-Negro for the 1969–70 school year.

297 F.Supp. 753, 756–758 (E.D.Ark. 1969).

■ The Supreme Court effectively foreclosed our consideration of this "white flight" plea in Monroe v. Board of Commissioners of City of Jackson, *supra* 391 U.S. at 459, 88 S.Ct. at 1705:

"We are frankly told in the Brief that without the transfer option it is apprehended that white students will flee the school system altogether. 'But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them.' *Brown II*, 349 U.S. at 300, 75 S.Ct., at 756."

Accord, Walker v. County School Board of Brunswick County, 413 F.2d 53 (4th Cir. 1969); United States v. Hinds County Board of Education, 417 F.2d 852 (5th Cir. 1969). See Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed. 2d 5, aff'g sub nom. Aaron v. Cooper, 257 F.2d 33 (8th Cir. 1958). It is therefore settled that in determining the feasibility of a school desegregation plan, public opposition to the plan is not a valid consideration.

■ Judge Harris found in his April 14 and June 12, 1969, orders that the appellees had evinced good faith in their efforts to desegregate the Marvell school system. Assuming arguendo that such finding is valid, good faith alone is insufficient in any event. "Good faith is relevant only as a necessary ingredient of an acceptable desegregation plan." Henry v. Clarksdale Municipal Separate School District, 409 F.2d 682, 684 (5th Cir. 1969). See also United States v. Indianola Municipal Separate School District, 410 F.2d 626, 631 (5th Cir. 1969). In regard to the good faith element, the Supreme Court stated in *Green*:

"Where the [district] court finds the board to be acting in good faith *and the proposed plan to have real pros-*

*pects for dismantling the state-imposed dual system 'at the earliest practicable date,'* then the plan may be said to provide effective relief." 391 U.S. at 439, 88 S.Ct. at 1695. (Emphasis added.)

■ We have examined with care the entire record and the statistical development of the desegregation efforts in the Marvell School District. We conclude, as Judge Harris initially found, that continued use of a freedom-of-choice plan will not effectively convert the district "to a unitary system in which racial discrimination would be eliminated root and branch," Green v. County School Board of New Kent County, *supra* at 438, 88 S.Ct. at 1694, and is therefore not constitutionally permissible.

Accordingly, the orders of the district court filed on April 14 and June 12, 1969, are vacated and the cause is remanded with directions to require the Marvell School District to file in the district court on or before a date designated by it a plan which will convert the present organization of the public schools of Marvell to a unitary, nonracial system. The plan shall eliminate all vestiges of the freedom-of-choice provisions and shall be fully implemented and become effective no later than January 19, 1970, the first school day of the second semester of the present 1969–70 school term. The district court shall retain jurisdiction to insure that the plan approved by it is fully executed. See Raney v. Board of Education, etc., *supra*, 391 U.S. at 449, 88 S.Ct. 1700.

The application of appellants for attorney's fees for services in the district court and on appeal is denied. All costs in this court will be taxed against appellees.

Because of the urgency of formulating and approving an appropriate plan our mandate shall issue forthwith and will not be stayed pending petitions for rehearing or certiorari.