Brenda K. MONROE et al., Plaintiffs-Appellees,

v.

COUNTY BOARD OF EDUCATION OF MADISON COUNTY, TENNESSEE, et al., Defendants-Appellants.

No. 20600.

United States Court of Appeals, Sixth Circuit.

March 15, 1971.

Jack Manhein, Sr., Jackson, Tenn., for appellants.

Sylvia Drew, New York City (Avon N. Williams, Jr., Nashville, Tenn., Jack Greenberg, James M. Nabrit, III, Norman Chachkin, New York City, on the brief), for appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

PER CURIAM.

This case originated in 1963 as a companion case to Monroe v. Board of Commissioners of the City of Jackson, Tennessee, in which the plaintiffs sought the elimination of the dual segregated school systems in Madison County, Tennessee, and the City of Jackson, Tennessee, respectively. Only the relevant parts of the complex procedural history of this case will be set forth here since it is more fully described in the prior reported opinions in this and the companion case.*

The present proceedings began in August, 1968, upon the plaintiffs-appellees' motion for further relief following the Supreme Court's decision in Monroe v. Board of Commissioners of the City of Jackson, Tennessee, 391 U.S. 450, 88 S.Ct. 1700 (1968), holding that the free transfer provisions of the prior court-approved desegregation plans were constitution-

ally impermissible. In response to that motion, the District Court, on May 7, 1969, ordered the Madison County Board of Education to submit by January 1, 1970, a new desegregation plan for the 1970–71 school year based on the assignment of students by unitary geographic zones. On December 16, 1969, the District Court amended its order in light of the Supreme Court's decisions in Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969), and Carter v. West Feliciana Parish School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1969), to require implementation of the geographic zone assignments by February 1, 1970. The District Court further ordered the Board to seek the assistance of the Department of Health, Education and Welfare in the formulation of such plans.

On January 2, 1970, the Board filed its plan of geographic zone assignments, and on January 15, 1970, the Department of Health, Education and Welfare filed a proposed plan of assignment based on slightly different geographic zones. Following a hearing on the two proposals, the District Court generally approved the Board's zones. However, with respect to five of the fourteen zones within the county, the District Court ordered slight modifications in the zone boundary lines in accordance with the Department of Health, Education and Welfare proposals. As so modified the zoning plan is now in effect, resulting in the bussing of approximately 125 students to schools other than those to which they would have been assigned under the Board's plan. The sole issue on appeal is whether the District Court abused its discretion in ordering the five relatively minor zone modifications suggested by the Department of Health, Education and Welfare.

---

* See Monroe v. Board of Commissioners of the City of Jackson, Tennessee, 229 F. Supp. 580 (W.D.Tenn.1964) ; Monroe v. Board of Education, Madison County, Tennessee, 269 F.Supp. 758 (W.D.Tenn. 1965), aff'd in part, vacated and remand- ed in part sub nom. Monroe v. Board of Commissioners of the City of Jackson, Tennessee, 380 F.2d 955 (6th Cir. 1967), vacated and remanded in part, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968).

A similar question of attendance zone modifications designed to achieve greater desegregation was involved in this Court's most recent decision in the companion case, Monroe v. Board of Commissioners of the City of Jackson, Tennessee, 427 F.2d 1005 (6th Cir. 1970). In discussing that question the Court stated:

"[W]e must begin with the fundamental principle that where the state has historically operated a dual, segregated school system, the local school boards are now charged with an affirmative duty to take whatever steps might be necessary to eliminate segregation by race and convert to a unitary school system. Green v. County School Board, 391 U.S. 430 [88 S.Ct. 1689, 20 L.Ed.2d 716] (1968); Raney v. Board of Education, 391 U.S. 443, [88 S.Ct. 1697, 20 L.Ed.2d 727] (1968); Monroe v. Board of Commissioners, 391 U.S. 450 [88 S.Ct. 1700, 20 L.Ed.2d 733] (1968). The basic test of the acceptability of a plan is whether it 'promises realistically to work, and promises realistically to work now.' Green v. County School Board, supra, at 439, 88 S.Ct. at 1694.

"The District Court, in examining the record before it, has apparently determined that revision of the attendance zones is necessary to insure the Board's compliance with its affirmative duty to disestablish segregation with a plan which 'promises realistically to work now.' * * * [T]he absence of a finding that the present zones were racially gerrymandered or that the Board acted in bad faith [does not] preclude the District Court from ordering this remedial relief. Green v. County School Board, supra, at 439, [88 S.Ct. 1689]; Jackson v. Marvell School District No. 22, 416 F.2d 380, 385 (8th Cir. 1969); Henry v. Clarksdale Municipal Separate School District, 409 F.2d 682, 684 (5th Cir.), cert. denied, 396 U.S. 940 [90 S.Ct. 375, 24 L.Ed.2d 242] (1969)."

Monroe v. Board of Commissioners of the City of Jackson, Tennessee, supra, at 1008–1009.

The above quoted language has equal application to the present case. Accordingly, we hold that the District Judge acted well within his discretion in ordering the Board to seek the assistance of the Department of Health, Education and Welfare and in adopting that agency's suggested zone revisions which it found necessary to insure the Board's compliance with its affirmative duty to disestablish segregation.

The judgment of the District Court is affirmed.

