Brenda K. MONROE et al., Plaintiffs-Appellants,

v.

COUNTY BOARD OF EDUCATION OF MADISON COUNTY, TENNESSEE, et al., Defendants-Appellees.

No. 73-2252.

United States Court of Appeals, Sixth Circuit.

Oct. 22, 1974.

Avon N. Williams, Jr., Nashville, Tenn., J. Emmett Ballard, Jackson, Tenn., Jack Greenberg, James M. Nabrit, III, R. Sylvia Drew, Norman J. Chachkin, New York City, for plaintiffs-appellants.

Hewitt Tomlin, Jr., Jackson, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Plaintiffs in this school desegregation action perfected this appeal from three unreported orders of the United States District Court for the Western District of Tennessee, Eastern Division, entered on August 10, 1973 and September 14, 1973. Said orders approved amendments to a geographic zone desegregation plan for the Madison County School System. The defendant school board did not appeal from the rulings of the district court. Plaintiffs assert (1) that the district court erred in approving a geographic zone plan for the system which leaves three formerly all-black schools 85%, 88% and 93% black, and (2) that the court erred in awarding an inadequate attorney's fee to them without a hearing, opportunity for submission of evidence, or specific findings, indicating the method of computation.

The Madison County Board of Education operated totally separate schools for black and white students at the time of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Plaintiffs, black pupils and their parents in the Madison County School System, commenced this suit in 1963 seeking to eliminate the racially segregated school system still in operation at that time. It should be noted that this case, dealing solely with the Madison County schools, was a "siamese twin" of Monroe v. Board of Commissioners of the City of Jackson, which has also appeared in this court a number of times.[1]

In May 1964 the district court approved a plan submitted by the defendant Board of Education calling for gradual desegregation over a period of two years with a provision for freedom of transfer between schools. 229 F.Supp. 580 (W.D.Tenn.1964). Plaintiffs filed a motion for further relief in September 1964 seeking, *inter alia*, faculty desegregation and desegregation of extra-curricular activities. 269 F.Supp. 758 (W. D.Tenn.1965). The district court denied relief with regard to integration of administrative and supportive personnel and integration of in-service training programs. 269 F.Supp. at 759. On appeal to this court, the lower court's opinion was affirmed except with respect to its refusal to order faculty desegregation. 380 F.2d 955 (6th Cir. 1967).

In August 1968 plaintiffs filed a motion for further relief following the Supreme Court's decision in Monroe v. Board of Commissioners of the City of Jackson, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968), which held that the free transfer provisions of the prior court approved desegregation plan were constitutionally impermissible. The district court ordered the defendants to submit a new desegregation plan for the

---

1. See Monroe v. Board of Commissioners of the City of Jackson, 505 F.2d 105 (6th Cir., filed of even date herewith).

1970–1971 school year based on the assignment of students by unitary geographic zones. Said order was amended in light of the Supreme Court's decisions in Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S. Ct. 29, 24 L.Ed.2d 19 (1969), and Carter v. West Feliciana Parish School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1969), to require implementation of the geographic zone assignments by February 1, 1970, and the court further ordered the defendants to seek the assistance of the United States Department of Health, Education and Welfare in drawing up its revised plan.

A hearing was held on the plans submitted by the Board and H.E.W. and the district court approved the Board's plan as slightly modified by the H.E.W. plan. As so modified, the zoning plan was put in effect after affirmance on appeal, 439 F.2d 804 (6th Cir. 1971).

In May 1972 the plaintiffs filed a motion for further relief charging that the desegregation plan then in operation failed to effectively desegregate the Madison County School System. In response to said motion, the district court held an evidentiary hearing, but reserved ruling on plaintiffs' motion. Defendants filed a motion to amend the previously approved plan of desegregation by closing two of the ten elementary schools in the system and reopening another and plaintiffs filed a plan drawn by Dr. Michael Stolee to further desegregate the school system. A hearing was held on defendants' motion to amend and on plaintiffs' proposed plan.

The district court, by memorandum opinion and orders of July 20, 1973, August 10, 1973, and September 14, 1973, approved defendants' plan as modified and awarded a limited attorney's fee to plaintiffs. Notices of appeal from the August 10 and September 14 orders were timely filed by plaintiffs.

There are 15 schools in the subject school system, 9 elementary and 7 secondary level.[2] The student population is approximately 7,000 of which 32% are black and 68% are white. Nearly 90% of all students are bussed to school. Prior to 1970, Denmark Elementary, West Junior High and West Senior High were black schools. The plan approved by the district court, based upon projected attendance figures for the 1970–1971 school year, was to have resulted in black enrollments at the above units of 81.7%, 74.6% and 68% respectively. For various reasons[3] the actual percentages for 1970–1971 were 95.6%, 89.8% and 97%. Following evidentiary hearings in August 1972 and July 1973 the district court ordered minor alterations in the plan. The plan as altered brought the following racial composition for the 1973–1974 school year: Denmark 85% black; West Junior 88% black; West Senior 93% black.

Plaintiffs assert that the amended plan of desegregation approved by the district court does not convert the Madison County School System from a dual to a unitary system as required by law. It is their position that any desegregation plan adopted in this case must be measured not by its promise, but by its results. Defendants counter that their duty is satisfied by the use of "neutral" geographic zones, and they are not responsible for the continuing variance between projected and actual attendance figures at the three schools.

As hereinabove pointed out, this school system has a history of seg-

2. Beech Bluff School enrolls grades 1–12 but is referred to as "one" school.

3. The Superintendent of the Madison County School System testified that there were, in his opinion, four factors responsible for the disparity between projected and actual attendance figures for Denmark Elementary, West Junior High and West Senior High:

(1) the changing of residence of people residing in the school zones; (2) availability of private schools in the area; (3) the transferring of students from the Madison County schools to other school systems; and (4) the long history of substantial black population in the area which is served by the three schools in question.

regation. There is, therefore, a presumption against schools that are substantially disproportionate in their racial composition, and the defendants have the burden of showing that such racial composition is not the result of present or past discrimination on their part. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 695 (1971). The question that must be asked is whether defendants have "[made] every effort to achieve the greatest possible degree of actual desegregation . . .," *Swann, supra,* 402 U.S. at 26, 91 S.Ct. at 1281, and "[t]he measure of any desegregation plan is its effectiveness." Davis v. School Commissioners of Mobile County, 402 U.S. 33, 37, 91 S.Ct. 1289, 1292, 28 L.Ed.2d 577 (1971). It is clear that in light of the above standards a fully unitary system has not been achieved in Madison County to date.

■ The geographic zone plan now in operation is, as defendants assert, racially neutral. The mere fact that the present plan is neutral, however, does not indicate that it is constitutionally adequate. *Davis, supra,* 402 U.S. at 37, 91 S.Ct. 1289. In 1969 the district court found that "Negro and white elementary schools have been historically located . . . near . . . Negro and white residential concentrations. Similarly, Negro High Schools have been established . . . near the center of substantial Negro residential concentrations while White High Schools have been established . . . near the center of white residential concentrations." Defendants now attempt to deny responsibility for the fact that geographic zones do not adequately desegregate the school system in spite of the fact that in large part the inadequacy is caused by the Board's historic placing of schools in such a way as to maximize segregation. Under the circumstances, unified geographic zoning is insufficient to eradicate the residual aspects of a dual sys-

tem, and the district court "should consider the use of all available techniques including restructuring of attendance zones and both contiguous and noncontiguous attendance zones." *Davis, supra,* 402 U.S. at 37,[4] 91 S.Ct. at 1291.

■ Plaintiffs also complain that the district court awarded them an inadequate attorney's fee without a hearing, opportunity for submission of evidence, or specific findings of fact. As we stated in our opinion in Monroe v. Board of Commissioners of the City of Jackson, of even date herewith, "[O]ur review [of the propriety of an award of attorneys' fees] is dependent upon some sort of record of the basis for the decision below . . .," and there is no record in this case. As in the *City of Jackson* case, the appropriate remedy is a remand for findings of fact and conclusions of law as to any attorney's fee awarded under the standards of Bradley v. School Board of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

The judgment of the district court is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this opinion.

---

4. Plaintiffs presented a desegregation plan drawn by Dr. Stolee. Although the "Stolee" plan appears to accomplish the desired result of desegregating Madison County schools, the record is insufficient for us to determine whether it is the best or only plan available.